In the Matter of the Accounting of CHARLES P. HIDDEN, as Committee of the Estate of HENRIETTA G. CATTA-PANI, an Incompetent Person, Appellant.

TITLE GUARANTEE AND TRUST COMPANY, as Administrator of the Estate of CARLO CATTAPANI, Deceased, et al., Respondents.

Incompetent persons — committee — former adjudication — appeal — commissions — costs — judgment in action where incompetent appears by her committee and he also appears individually no bar to examination on accounting as to his conduct in action — decision on accounting, that committee has been guilty of misconduct, a finding upon that question which Court of Appeals has no power to review where unanimously affirmed prior to July 15, 1926 — statutory and constitutional provisions restricting jurisdiction applicable to special proceedings as well as to judgments — must be conclusively presumed that there is evidence to sustain findings — court may in proper case refuse compensation to committee — may direct him to pay expenses of reference and allowance to special guardian — may not direct payment of special allowance to husband of incompetent, nor to his administrator, for expenses on appeal.

1. A judgment in an action for the construction of a will in which an incompetent person, interested thereunder, appeared by her committee, who was also individually interested in and a party to the action, constitutes no bar, upon a subsequent accounting of the committee, to an examination of his conduct in the action, he being accused of having enriched himself therein at the expense of the incompetent

whom he represented.  The propriety of the committee's conduct as representative of the incompetent could not be litigated in that action and the adjudication of the incompetent's rights in the estate under consideration cannot, by its nature, be conclusive upon the question whether, except for wrongful acts on the part of her committee in that action, she might not have obtained more valuable rights.  The committee and the attorney selected by him might, subject to the approval of the court, bind the incompetent, but the question still remains open whether in so doing they were guilty of any wrong.

2. Where, upon settlement of the accounts of a fiduciary, evidence of his wrongdoing is elicited, the court may determine whether he has been guilty of misconduct, though question as to it was not raised by the filing of formal objections.  The decision of the court constitutes a finding upon that question and having been unanimously affirmed by the Appellate Division, the Court of Appeals is precluded from examining whether there is evidence to sustain such finding by the provisions of the Constitution (Art. 6, § 9), and of the Civil Practice Act (§ 589, subd. 3), in effect at the date of the decision of the Appellate Division, which provisions apply to special proceedings as well as to judgments, even though no formal findings are made.

3. Nor may this court examine the record to find out whether the evidence sustains findings as to the amount of the unjust enrichment or as to the propriety of payments made by the committee to his counsel.  It must be conclusively presumed as to all such findings that there is evidence.

4. The court may, in a proper case, refuse compensation to the committee of an incompetent person upon finding of his misconduct.

5. And it may also direct the committee to pay the expenses of a reference and the amount of an extra allowance to the special guardian of the incompetent, which were necessarily incurred in order to establish his alleged wrongdoing.  Though, under section 1381 of the Civil Practice Act, the compensation of the referee and of the special guardian must in every case be paid out of the estate, if any, for the depletion of the estate consequent upon the wrongdoing of the fiduciary, he should equitably be called upon for repayment, and since the court could order the committee to repay to the estate expenses caused by his wrong, it may reach the same result by order to pay such expense directly and thus avoid the expense becoming a charge upon the estate.  The power so to do is part of the directory and supervisory control by the court of the committee appointed by it.

6. A direction, however, to pay a special allowance to the husband of the incompetent who participated in the proceedings, is improper. The statute provides for the appointment of a special guardian to

represent the incompetent and for payment of his compensation out of the estate, which should not be charged with further compensation to the husband, and, since the estate may not be charged with such expense, the committee may not be called upon to pay it personally or in representative capacity.

7. Nor has the court power to grant an allowance to the administrator of the husband's estate for services rendered upon appeal. Allowance to the special guardian, however, for such services was proper. The committee cannot rid himself of the liabilities incidental to the trust relation until he has paid whatever expenses were involved in determining the extent of his misconduct and in measuring the estate to be turned over to his successor.

*Matter of Hidden*, 215 App. Div. 765, modified.
*Matter of Hidden*, 216 App. Div. 740, reversed.
*Matter of Hidden*, 216 App. Div. 740, affirmed.

(Argued October 12, 1926; decided November 16, 1926.)

APPEAL, by permission, from so much of an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 15, 1926, as affirmed an order of Special Term settling the accounts of Charles P. Hidden, as committee of the estate of Henrietta G. Cattapani, as incompetent person. Also appeal, by permission, from an order of said Appellate Division, entered March 12, 1926, which affirmed an order of Special Term granting an allowance to the administrator of the estate of Carlo Cattapani for counsel fees. Also appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 12, 1926, which affirmed an order of Special Term granting an allowance to the special guardian of the incompetent.

*Charles E. Hughes, C. Alexander Capron* and *Levi S. Hulse* for appellant. The judgment of the Supreme Court in *Watson* v. *Hidden*, directing payment to Mr. Hidden of ninety per cent of his legacy, cannot be re-examined in this proceeding in the absence of fraud which was neither alleged, proved nor found. (*Farmers' Loan & Trust Co.* v. *Lake Street El. R. R. Co.*, 177 U. S. 51; *Thompson* v.

*Maxwell Land Grant Co.*, 168 U. S. 451; *Smith* v. *Central Trust Co.*, 154 N. Y. 333; *Galpin* v. *Page*, 18 Wall. 350; *Blake & Johnson* v. *Lyon & Fellows M. Co.*, 77 N. Y. 626; *Hill* v. *Guaranty Trust Company*, 157 App. Div. 907; *McMurray* v. *McMurray*, 66 N. Y. 175; *Croghan* v. *Livingston*, 17 N. Y. 218; *Crouter* v. *Crouter*, 133 N. Y. 55; *Jackson* v. *Brunor*, 17 Misc. Rep. 339; *Rook* v. *Dickinson*, 38 Misc. Rep. 690; *Jenkins* v. *Young*, 43 Hun, 194; *Matter of Becker*, 28 Hun, 207.) There being no findings of the court and no pleadings with relation to the matters in controversy, this court may only presume that the facts which were warranted by the evidence were found by the lower court. (*Hutton* v. *Smith*, 175 N. Y. 375; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Cons. El. Storage Co.* v. *Atlantic Trust Co.*, 161 N. Y. 605.) The court erred in surcharging the account of the appellant and in disallowing the commissions, counsel fees, etc., and in charging him personally with the various items set forth in the order. (*Osborn* v. *Cardeza*, 208 N. Y. 131; *Bishop* v. *Hendrick*, 82 Hun, 323; 146 N. Y. 398; *Lurman* v. *Jarvie*, 82 App. Div. 37; *Matter of Holden*, 126 N. Y. 589; *Matter of City of Brooklyn*, 148 N. Y. 107; *Matter of State of New York*, 152 App. Div. 633; 207 N. Y. 582; *County of Erie* v. *Fridenberg*, 221 N. Y. 389; *Matter of Mankowski*, 49 Misc. Rep. 606; *Syracuse Bank* v. *Stokes*, 71 Misc. Rep. 508; *Matter of Tarrytown, etc., Railway Co.*, 133 App. Div. 297.) The direction contained in the orders that the counsel fees of the respondent and the allowance to the special guardian should be paid by Mr. Hidden personally, is entirely without authority to support it. (*Osborn* v. *Cardeza*, 208 N. Y. 131; *Mattlage* v. *New York Elevated R. R. Co.*, 17 N. Y. Supp. 536; *Bishop* v. *Hendrick*, 82 Hun, 323; 146 N. Y. 398; *Commerce Exchange National Bank* v. *Blye*, 123 N. Y. 132.)

*N. Howard Pinto* and *Francis J. Clark* for Title Guarantee and Trust Company, as administrator of estate

of Carlo Cattapani, deceased, respondent. The order of affirmance of the Appellate Division having been unanimous, this court will not inquire into, much less disturb, findings of fact but will restrict itself to pure questions of law. (Const. N. Y. art. 6, § 9; *People* v. *Bingham,* 205 N. Y. 168.) The judgment in *Watson* v. *Hidden* is not *res adjudicata* and was in no wise binding on the courts below. (*Hill* v. *Guaranty Trust Company,* 157 App. Div. 907; *Landon* v. *Townshend,* 129 N. Y. 166; *Collins* v. *Hydorn,* 135 N. Y. 320; *Helme* v. *Buckelew,* 229 N. Y. 363; *Harris* v. *Pearsall,* 116 Misc. Rep. 366; *Matter of Yetter,* 44 App. Div. 404; 162 N. Y. 615; *Matter of Anderson,* 211 N. Y. 136; *Mehlhop* v. *Central Union Trust Co.,* 235 N. Y. 102; *Erie Railroad Co.* v. *International Railway Co.,* 209 App. Div. 380; 239 N. Y. 598; *McMaster* v. *Gould,* 240 N. Y. 379.) The allowances to Carlo Cattapani, husband of the incompetent, and to the special guardian were reasonable in amount and proper in law. (*People* v. *Bresler,* 218 N. Y. 567; *Fries* v. *N. Y. & Harlem R. R. Co.,* 169 N. Y. 270; *Sporza* v. *German Savings Bank,* 192 N. Y. 8; *Matter of Andrews,* 192 N. Y. 514; *Matter of Yetter,* 44 App. Div. 404; 162 N. Y. 615; *Trustees* v. *Greenough,* 105 U. S. 527; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.,* 129 N. Y. 27; *Wetmore* v. *Parker,* 52 N. Y. 450; *Matter of Howell,* 215 N. Y. 466.) The disallowance of commissions and counsel fees was proper. (*Matter of Gall,* 107 App. Div. 310; *Matter of Rutledge,* 162 N. Y. 31; *Stevens* v. *Melcher,* 152 N. Y. 551; *Cook* v. *Lowry,* 95 N. Y. 103; *Matter of Allen,* 96 N. Y. 327; *Matter of Douglas,* 60 App. Div. 64; *Matter of Williamsburgh Trust Co.,* 72 Misc. Rep. 592; *O'Reilly* v. *Meyer,* 4 Dem. 161; *Matter of Abbot,* 39 Misc. Rep. 760; *Matter of Jones,* 4 Sandf. Ch. 615.) The allowances are proper in law. (*People* v. *Luce,* 204 N. Y. 478; *Sporza* v. *German Savings Bank,* 192 N. Y. 8; *Matter of Maxwell,* 218 N. Y. 88; *Trustees* v. *Greenough,* 105 U. S. 527; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.,* 129 N. Y. 27,

*Wetmore* v. *Parker*, 52 N. Y. 450; *Pittman* v. *Johnson*, 35 Hun, 38; 102 N. Y. 742; *Matter of Abbot*, 39 Misc. Rep. 760; *Matter of Jones*, 4 Sandf. Ch. 615.)

*William T. Van Alstyne*, special guardian, for incompetent, respondent. The judgment in *Watson* v. *Hidden* is not binding on the incompetent. (*McMurray* v. *McMurray*, 66 N. Y. 175; *Hill* v. *Guarantee Trust Co.*, 157 App. Div. 907; *Steele* v. *Hutton*, 3 Law Bull. 99.) Hidden's conduct as committee can only be reviewed in a proceeding to settle his accounts as committee. (*Matter of Anderson*, 211 N. Y. 136.) The committee should be personally charged with the expenses of this entire proceeding. (*Matter of Jones*, 4 Sandf. Ch. 615; *Howard* v. *Rhodes*, 1 Keen, 581; *Courtenay* v. *Courtenay*, 3 Jones & L. 529; Perry on Trusts [6th ed.], 280; *Matter of Abbot*, 29 Misc. Rep. 760; *Matter of Gall*, 107 App. Div. 310; *Matter of Rutledge*, 162 N. Y. 31; *Stevens* v. *Melcher*, 152 N. Y. 551; *Cook* v. *Lowry*, 95 N. Y. 103; *Matter of Allen*, 96 N. Y. 327; *Matter of Douglas*, 60 App. Div. 64; *Matter of Williamsburgh Trust Co.*, 72 Misc. Rep. 592.)

*Harold Swain* and *Arthur H. Indell* for Title Guarantee and Trust Company, as committee of the estate of Henrietta G. Cattapani, respondent. The court which appointed the appellant as the committee of the incompetent had the power and was under the duty to review all the acts of the committee upon his application for the approval of his accounts and for leave to resign. (*Hill* v. *Guaranty Trust Co.*, 157 App. Div. 907; *Sporza* v. *German Savings Bank*, 192 N. Y. 8.)

LEHMAN, J. In June, 1921, Charles P. Hidden petitioned the Supreme Court in the county of New York for leave to resign as committee of the property and estate of Henrietta G. Cattapani. At the same time he asked that he be permitted to file his accounts and that

they be judicially settled. An order was thereupon entered that the accounts be filed and that notice be given to the husband of the incompetent and other persons named in the order. The husband of the incompetent appeared and filed objections to the account. A special guardian was also appointed to represent the incompetent. A referee was then appointed " to examine, take and state the third intermediate account of the said Charles P. Hidden as Committee of the Property and Estate of said Henrietta Gardner Cattapani, an incompetent person, and any objection that may be filed thereto, and take testimony in support thereof, and the said Referee is hereby further ordered and directed to examine said petitioner and take proof as to his application permitting him to resign and be discharged as such Committee."

At the first hearing the husband of the incompetent filed objections to the accounts, and in one of these objections claimed that an item of $1,200.05 paid to the attorney for the committee " is excessive and improper and should be reduced." The voucher for this item showed that the services so paid for included " advice and services in the case of *Watson* v. *Hidden, Cattapani et al.* and the *Estate of T. B. Hidden, deceased,* and securing payment of legacy under the Will of said deceased." The special guardian, in pursuance of his duty to represent the incompetent, examined into the nature of these services and in the course of the examination he elicited certain testimony concerning the nature of the matters litigated in the case of *Watson* v. *Hidden,* and the payment of the legacy bequeathed to the incompetent under the will of Thomas B. Hidden, which has given rise to a claim that the committee has enriched himself at the expense of the incompetent whom he represented.

Briefly this testimony shows that Thomas B. Hidden died in September, 1918. Under his last will and testa-

ment and the codicils thereto, he bequeathed the sum of $500,000 to his nephew Charles P. Hidden. He bequeathed other large sums in trust for the benefit of various relatives or other persons and provided for several annuities. The will also contained some other specific legacies of small amount in proportion to the size of the estate. The decedent bequeathed the residue of the estate to certain religious and benevolent corporations, but the value of the estate at the time of the death of the testator was insufficient to provide in full for the payment of the specific legacies and annuities. The executors of the deceased paid to those entitled thereto fifty per cent of each legacy. They retained assets which were sufficient in value, if sold, to provide for further payments. The executors were unwilling to sell the remaining securities belonging to the estate, and believed that they should be held in expectation of increase in value. Apparently most of the legatees having an interest in the trust funds bequeathed under the will agreed with the executors. Charles P. Hidden, on the other hand, desired immediate distribution of the estate to the legatees either in cash, after sale of the securities, or by division of the securities. There was also some difference of opinion as to whether certain of the small legacies and the annuities were subject to abatement or should be paid in full. One of the legatees named in the will brought an action in Dutchess county for the construction of the will. That action (*Watson* v. *Hidden*) was begun in 1920. All the persons interested in the estate were named as parties. The incompetent, Mrs. Cattapani, was entitled under the will to a one-fifth interest in a bequest of $20,000, and to a life interest in a bequest of $50,000. Charles P. Hidden, because of his legacy of $500,000, was of course a party to the action individually. He was also a party as committee of the incompetent, and the incompetent was also named as a party individually. Charles P. Hidden directed his personal attorney, who had been the personal

attorney of the testator, to represent the interests of the incompetent and to appear for her and her committee. He appeared by another attorney.

All parties desired that every disputed or doubtful question should be settled and determined in that action. There were discussions and negotiations between the parties, and finally most of the parties interested joined in a stipulation determining the disposition that should be made of the estate. The committee and his attorney approved of the disposition so agreed upon, but their approval was made subject to the further approval of the court. The court, after hearing a statement of the questions involved, made a decision which was in accordance with the stipulation previously made and which was apparently not opposed by any legatee. Under the judgment entered upon that decision, Charles P. Hidden individually received forty per cent of his legacy, in addition to the fifty per cent he had already received, and the smaller legacies were paid without abatement. No further immediate payment of the legacies made in trust for other parties, including the incompetent, was made at that time. The result is that Mr. Hidden individually has received ninety per cent of his legacy, while other legatees, including the incompetent whom Mr. Hidden represented as committee, have received the interest on only fifty per cent of the amount bequeathed in trust for them, except as such amount has since been increased by further payment from the estate, though it appears that eventually at least ninety per cent will be paid on these legacies also.

The referee thereafter filed his report overruling the objections filed to the account. He did not in his report undertake to determine whether Mr. Hidden had properly protected the interests of the incompetent in connection with the proceedings in the case of *Watson* v. *Hidden.* His report merely states: " I find that the Committee acted in accordance with the judgment in that case

dated July 24, 1920, and that his actions thereunder cannot be questioned in this proceeding." The original guardian *ad litem* died before the referee filed his report. The present special guardian was then appointed. He informed the court that: " The conduct of the Committee of the Property in connection with the estate of Thomas B. Hidden presents an unsatisfactory condition; " but he suggested " in view of the probable small loss which may result to the trust fund created for the benefit of the incompetent " and the large expense to which the estate might be put by further examination into the propriety of the committee's conduct, that the resignation of the committee should be accepted and his accounts settled subject to certain conditions intended to safeguard the interests of the incompetent.

The justice at Special Term thought otherwise. He held that the judgment in *Watson* v. *Hidden* did not bar inquiry into the conduct of the committee in that action, and he referred the proceedings back to the same referee to take proof of the facts and circumstances concerning the action of *Watson* v. *Hidden* and the settlement thereof.

The referee took such proof and made a report in which he completely approved the conduct of Mr. Hidden. The report of the referee was not confirmed. The court took further testimony and then made an order adjudging, among other things, that the committee should pay to the incompetent the amount of interest or income which the incompetent would have received if the same distribution had been made upon the legacy in trust for her as was made upon the legacy of Mr. Hidden; that certain payments made by the committee for counsel fees and other expenses should be reduced or disallowed; that no commissions or compensation should be allowed to the committee; and that the costs and expenses of the second reference and counsel fees allowed to both the husband and the special guardian of the incompetent should be paid by the committee personally. The Appel-

late Division has by its unanimous decision affirmed the order.

No formal decision embodying findings of fact and conclusions of law was made by the justice at Special Term. Basis for the provisions of the order can be found, if at all, only in a finding that Mr. Hidden as committee of the incompetent failed in his duty to the incompetent when, pursuant to the terms of the judgment in *Watson* v. *Hidden*, he received and accepted distribution of an additional forty per cent upon his legacy, and did not obtain a similar distribution upon the legacy made in trust for the incompetent. No other question was litigated upon the second reference or considered by the court upon the motion to confirm the report of the referee, and the opinion of the justice at Special Term states the reasons why he decided this issue against the committee. The committee now claims that, since the judgment in the case of *Watson* v. *Hidden* has fixed the amount and time of the payments upon both his legacy and the legacy in trust for the incompetent, the propriety of the committee's acts in receiving and accepting such payments may not be questioned in any other legal proceedings. The committee claims even more insistently that if the propriety of his acts may be questioned, the evidence conclusively establishes that he has faithfully performed the duties imposed upon him by his position and sedulously safeguarded the interests of the incompetent.

The judgment of *Watson* v. *Hidden* constitutes no bar to the examination of the committee's conduct which the court at Special Term has made. The incompetent was a party to that proceeding and was represented by the committee and by an attorney chosen for her by the committee. Doubtless adjudication in regard to any matter which was or could be litigated in that action between the parties thereto would be conclusive thereafter in all proceedings between the same parties, but it seems too plain for argument that there could be no

[243 N. Y. 499]      Opinion, per LEHMAN, J.      [Nov.,

litigation and hence no conclusive adjudication as to the propriety of the committee's conduct in an action where the incompetent can appear only through the committee or the attorney selected by the committee and the committee is a party to the action only as the representative of the incompetent. Doubtless the judgment in *Watson* v. *Hidden* would be conclusive as to a claim by the incompetent against the executors of the estate of Thomas B. Hidden that they should not have made larger payments upon the legacy to Charles P. Hidden than upon the legacy in trust for her. Argument may be made that it would be conclusive as to a claim which the incompetent might make as legatee against Charles P. Hidden as an individual because of the receipt and acceptance of such payment upon his own legacy, but here the claim made on behalf of the incompetent is that the committee did not properly represent her in the litigation, and because he did not represent her properly he obtained as an individual a judgment which gives to him advantages to which she was equally entitled. The propriety of the committee's conduct as representative of the incompetent could not be litigated in that action and the adjudication of the incompetent's rights in the administration of the estate of Thomas P. Hidden can by its very nature not be conclusive upon the question whether, except for wrongful acts on the part of her committee in that action, she might not have obtained more valuable rights. The committee and the attorney selected by him might, subject to the approval of the court, bind the incompetent, but the question still remains open whether in so doing they were guilty of any wrong to the incompetent.

The court at Special Term has held that the committee did act wrongfully, and that through the judgment so obtained the committee has enriched himself at the expense of the incompetent. Perhaps if we had the right to determine the question ourselves, some of us

might reach a different conclusion. The justice at Special Term has stated in his opinion that there is " no evidence of personal dishonesty against the committee." We have pointed out that Charles P. Hidden as an individual has, pursuant to judgment of the Supreme Court, obtained payment of a larger proportion of the legacy left to him as an individual than the payment he has insisted, as committee of the incompetent, should be made upon the legacy in trust for the incompetent. We shall not point out in detail the circumstances which led the court which rendered judgment in *Watson* v. *Hidden* to determine that such result was just and in the best interests of the incompetent. These circumstances may have led the committee and his counsel in good faith to the same conclusion. Determination of the question before us requires no analysis of evidence or weighing of the considerations which may have led to the action taken by the committee in behalf of the incompetent. The standards of conduct which the courts apply to persons who act as committee are very high. Self-interest, even unconscious, may not dictate their actions. The referee who heard and weighed the testimony reported that the committee had not fallen below those standards. The justice at Special Term reached an opposite conclusion. The Appellate Division has unanimously affirmed his decision. Perhaps men might reasonably differ as to whether that decision was justified. We may not consider such question.

Undoubtedly the court may, upon the settlement of the accounts of a fiduciary, determine whether the fiduciary has been guilty of misconduct and whether his accounts are correct, where evidence of wrongdoing is elicited by examination of the fiduciary; though previously such wrongdoing was not known and question as to it was not raised by the filing of formal objections. Such question was the only one litigated upon the second reference and was the principal question considered by

[243 N. Y. 499]        Opinion, per LEHMAN, J.                [Nov.,

the court.   The justice at Special Term had jurisdiction
to determine this question, and his decision constitutes
a finding upon that question.   The provisions of the
Constitution and of the Civil Practice Act, which still
apply to the review of the order before us, preclude us
from examining whether there is evidence to sustain such
finding after it has been unanimously affirmed by the
Appellate Division.   (*People ex rel. Stephenson* v. *Bing-
ham*, 205 N. Y. 168, and cases there cited.)   These pro-
visions apply to orders in special proceedings as well as
to judgments, even though no formal findings are made.
(See opinion of CULLEN, Ch. J., in *Matter of City of
New York*, 200 N. Y. 536.)   The rule has never been
limited to cases where the issue is raised by pleadings or
through formal objections.   It applies in every case
where a court actually determines a disputed question
of fact.

When the court found that the committee had enriched
himself at the expense of the incompetent, it was bound
to determine the amount of such unjust enrichment.
That determination again must be based upon the evi-
dence and constitutes a finding of fact, correct or erroneous
in law, according to whether or not it is sustained by
the evidence.   That question also we may not review.
These same considerations apply to the question of
whether the accounts of the committee may be surcharged
by payments made to his counsel or committee.   If not
justified by circumstances the committee had no right
to make them.   This court may not examine the record
to find out whether the evidence sustains a finding that
under the circumstances of the present case such pay-
ment was not justified.   We must conclusively presume
as to all such findings that there is such evidence.

Two questions of law still remain subject to review
by this court:   *First.* Did the court have power to
deprive the committee of compensation for his services?
*Second.* Did the court have power to direct the com-

mittee to pay the expenses of the second reference and special allowances to the special guardian and to the husband of the incompetent? We begin consideration of both these questions with the premise that the court has made the preliminary finding that the committee has acted wrongfully.

Section 1376 of the Civil Practice Act provides that " A committee of the property is entitled to the same compensation as an executor, administrator or testamentary trustee." The statute does not expressly vest in the court any discretion as to whether such committee shall receive the statutory compensation, and this court has never expressly held that such discretion is implied. Nevertheless it seems anomalous that the estate of an incompetent must in every case pay compensation to a committee, though the court has found that the committee has not been faithful to his trust. Accordingly this court held in *Matter of Rutledge* (162 N. Y. 31) that even under the provision of the Code that " on the settlement of the account of an executor or administrator, the surrogate must allow to him for his services," etc., the mandatory language does not exclude discretion in the surrogate to refuse to allow compensation where " the services were such as were prejudicial to the just and lawful administration of the estate." No valid distinction may be made between the rights of an executor or administrator and the rights of a committee to the statutory compensation. In both cases the court may in a proper case refuse such compensation, upon finding of misconduct by the fiduciary.

The question of whether the court had power to direct the committee to pay the expenses of the reference and the extra allowances presents greater difficulty. No power to impose costs personally against the committee except in direct proceedings for his removal has been given by statute. Indeed, the statute provides that

33

upon the settlement of the accounts of the committee, " the compensation of the referee and of the special guardian appointed under the provisions of this section shall in every instance be fixed by the court *to be paid out of the estate,* if any, of the incompetent person." (Civ. Prac. Act, section 1381.) Costs are the creature of statute, and no statute can be found which would empower the court to impose payment of these expenses and allowances as costs. This part of the order may, therefore, be sustained only if the court has inherent power to direct the committee to pay the expenses necessarily and properly incurred in securing the restitution of moneys withheld by the committee.

The committee is appointed by the court and answerable to it for the proper administration of his trust. The second reference was necessary to establish the alleged wrongdoing of the committee. If the estate must pay the expenses of that reference, the incompetent has only incomplete remedy for wrong suffered. The loss to the estate which the incompetent has suffered and the expense of the legal proceedings necessary to secure restitution are both the direct results of the acts of the committee which the court has found were wrongful. For the direct results of wrong found, a delinquent fiduciary may be held accountable. That is indeed the purpose of the accounting. Though under the statute the compensation of the referee and of the special guardian must in every case be paid out of the estate, if any, it may hardly be doubted that for the depletion of the estate consequent upon the wrongdoing of the fiduciary, the fiduciary should equitably be called upon for repayment. Though direct precedent for the exercise of such power may be wanting, the power is part of the directory and supervisory control by the court of the committee appointed by it. Since the court could order the committee to repay to the estate expenses caused by his wrong, it may reach the same result by order to the

committee to pay such expense directly and thus avoid the expense becoming a charge upon the estate. The court might, therefore, include in its order a direction to the committee to pay the expenses of the second reference, including the compensation of the special guardian, which were necessarily incurred in order to establish the alleged wrongdoing of the committee and to secure reparation for such wrongs.

The direction to pay the special allowance to the husband of the incompetent rests on weaker foundation. The husband of the incompetent is entitled to notice of the filing of the account and the application for the judicial settlement thereof. (Civ. Prac. Act, sections 1360, 1381.) He is a party to the proceedings and may file objections to the account if he sees fit; but, at least after the appointment of the special guardian, he does not represent the wife, and if he continues to participate in the proceedings he does so merely as a party who has a personal interest, pecuniary or otherwise, in the outcome. His participation in the proceedings in this case may have contributed to the restoration of property to the incompetent, but it does not follow that he is entitled to be paid out of such property the value of his services or the services of his attorney. That property when restored belonged to the incompetent and not to the husband, though if he had survived his wife, he might eventually have received as part of her estate any portion of the income which had not then been expended. Parties who are trustees of a fund or have an interest therein in common with others are, it seems, entitled to reasonable allowances for costs and expenses incurred in the protection of that fund out of property secured or protected by their efforts. (*Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27; *Trustees* v. *Greenough*, 105 U. S. 527.) That rule, however, has no application to the present case where the property recovered belongs to the incompetent, and her husband has no interest

**516**     MATTER OF HIDDEN.

therein in common with her, which he was called upon
to protect. The statute provides for the appointment
of special guardian to represent the incompetent, and
his compensation must be paid out of the estate. The
estate should not be charged with further compensation
to the husband, and since the estate may not be charged
with such expense, the committee may not be called
upon to pay it personally or in representative capacity.
The order appealed from should be modified by striking
out the direction for the payment by Charles P. Hidden
personally of special allowance and disbursements to
Carlo Cattapani, amounting to $2,608.

After the Appellate Division had affirmed the order
of the Special Term, the special guardian of the incom-
petent and the administrator of the estate of Carlo
Cattapani moved for an allowance for counsel fees in
connection with the preparation for and argument of
the appeal. Their motions were granted and orders
were entered allowing to the administrator the sum of
$800 and to the special guardian the sum of $750, both
to be paid by Charles P. Hidden personally. These
orders were affirmed on appeal to the Appellate Division,
and Mr. Hidden now appeals from them to this court.
Of course, since the court has no power to grant an
allowance to the husband of the incompetent for services
rendered in the original proceeding, it certainly may
not grant an allowance to the administrator of his estate
for services rendered upon the appeal. A majority of
this court are of the opinion that allowance to the special
guardian for services in connection with the preparation
and argument of the appeal was properly granted.

We hold that though at that time Mr. Hidden was
no longer a trustee, he would not rid himself of the
liabilities incidental to the trust relation until he had
paid whatever expenses were involved in determining
the extent of his misconduct and in measuring the estate
to be turned over to his successor. The liability could

not depend upon the precise moment of time when the words " you are removed " were uttered, whether after the accounting or before it.

What is true of expenses in the court of first instance must be true, and for like reasons, of expenses on appeal. The appeal is a continuation or extension of the proceeding in the court below.  (*Nations* v. *Johnson,* 24 How. [U. S.] 195, 205; *Clarke* v. *Mathewson,* 12 Pet. [U. S.] 164, 170.)   The loss resulting to the trust from the wrong of the trustee is as much a personal charge in the one court as in the other.

If a trustee removed, but required to account thereafter, must pay the cost of an accounting, so also must a trustee who has been permitted to resign.

The order settling the accounts of the committee should be modified in accordance with the opinion and as so modified affirmed, without costs; the order making special allowance on appeal to the administrator of the estate of Carlo Cattapani should be reversed, with costs, and the order granting special allowance to special guardian affirmed, with costs.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Ordered accordingly.