In the Matter of the Estate of IRVING I. BLOOMINGDALE, Deceased.

Surrogate's Court, New York County, September 22, 1939.

*Arthur T. O'Leary*, for Geanne Hughes Bloomingdale Butler, as executrix and cotrustee.

*Arthur T. O'Leary*, for Geanne Hughes Bloomingdale Butler, individually on intermediate application for payment of surplus income and on intermediate application for payment of fixed monthly income.

*Max D. Steuer* [*Sidney O. Friedman* of counsel], for Donald Bloomingdale and Rosalie B. Bloomingdale, beneficiaries.

*Alexander J. Lindsay* and *Richmond J. Reese* [*Lindsay & Reese* of counsel], for Richmond J. Reese, as executor and cotrustee, and in their own behalf in their claim for attorneys' fees.

*Cadwalader, Wickersham & Taft* [*Thomas B. Gilchrist* and *Daniel E. Woodhull, Jr.*, of counsel], in their own behalf.

*Albert J. Hiers*, for the New Amsterdam Casualty Company, the Continental Casualty Company and the Globe Indemnity Company.

*Thomas E. White*, for the Fidelity and Casualty Company of Maryland.

*Frederick W. McGowan*, for the National Surety Corporation.

*Wendell P. Barker* [*Vernon Murphy* of counsel], for James R. Murphy, Inc.

FOLEY, S.  The issues in this proceeding involve the judicial settlement of the third account and the supplemental account of Richmond J. Reese, the executor of the estate, and the third account and the supplemental accounts of Mrs. Geanne H. Bloomingdale Butler, the executrix.  The period of the third account covers from August 1, 1935, to February 1, 1938, and the supplemental accounts involve transactions during the period from February 2, 1938, to January 3, 1939.  The controversies arising over these accounts, as between the executor and executrix and certain beneficiaries of the estate, have been extremely bitter.  Approximately two hundred objections were filed to the various accounts.

Many of the objections of Mrs. Butler to Mr. Reese's accounts were overruled as a matter of law because of the conclusiveness of decrees previously made during the course of the administration of the estate.  Extensive oral and documentary testimony was taken upon other objections.  Claims for certain items of reimbursement by Mrs. Butler as executrix were disposed of upon the trial.  The necessity for discussion of certain of the issues has extended regretfully this decision beyond the desirable ends of brevity and reticence.

The remaining questions which require discussion and determination are as follows:

(1) The question as to surplus income claimed to be due Mrs. Butler as one of the life tenants of the estate.

(2) The allowance of compensation and disbursements to the various attorneys for the executor and executrix and the determination as to whether they constitute proper charges payable out of the estate.

(3) The award or denial of commissions to the executor and to the executrix.

(4) The application of Mrs. Butler for the monthly payments directed to be paid to her under the will and claimed to be due from January 15, 1938.

(5) Many of the objections were ruled upon by the surrogate during the trial.  A summary of the rulings previously made and

the rulings upon the remaining objections has been included at the end of this decision and may be a guide to the attorneys for the preparation and submission of an accurate final decree.

*First.* The first item presented for determination is the application of Mrs. Butler as beneficiary for surplus income alleged to be due her in the sum of $116,311.57. That issue was raised by an application made by her in the accounting proceeding and also by objections to the accounts.

The second intermediate account of the executors covered the period from December 1, 1930, to July 31, 1935. It was judicially settled by decree of this court dated May 10, 1937. That decree earmarked the sum of $81,527.51 as income remaining in the hands of the executors at the close of the period of the account, July 31, 1935. The provisions of the decree, however, did nothing more than identify the amount as income and contained no reference as to its disposition. Reservation, however, had been made in Schedule M of the second account for the determination of any surplus income due Mrs. Butler. If, therefore, she was legally entitled to any surplus income her right to procure a determination was open to her in any subsequent proceeding, including the present one.

Directions were made by the testator in the will and codicil for certain payments of income which were entitled to priority out of the net income of the estate. The surplus net income, after the payment of these preferred charges, was directed to be paid to Mrs. Butler. The amount of surplus income involved in the disposition of this question accumulated during the period from October 16, 1929, to December 31, 1931. In the calendar year 1932 I find there was a very slight deficit in income and a required invasion of principal to make good the mandatory income and other proper income charges under the will. I find also that in the year 1933, and in subsequent years, because of the decision of the United States Supreme Court in *Helvering* v. *Butterworth* (*Pardee*) (290 U. S. 365, 370), which changed the method of assessment of Federal income taxes, the annual deficits in income were greatly increased. Upon this point the surrogate accepts as correct the computations contained in the affidavit of Mr. Shea, the accountant for Mr. Reese as executor. In 1933 the deficit in income amounted to $38,052.19; in 1934 it was $65,789.91; in 1935 it was $5,731.39, and in 1936 it was $55,417.62. The total of these annual deficits is $164,991.11. It will thus be seen that these subsequent deficits completely wiped out the balance of surplus net income amounting to $81,527.51 earmarked in the decree of May 10, 1937.

Upon the trial of this proceeding and as a matter of first impression, the surrogate was of the tentative opinion that Mrs. Butler,

as life tenant, might be entitled to the present payment of earmarked surplus income in the hands of the executors at the expiration of the earlier period, upon the theory of annual rests. Further consideration of the question of law, and an analysis of the deficits in years subsequent to December 31, 1931, compels the final determination that no surplus income is due Mrs. Butler. She consented to the holding of the surplus income in the hands of the executors and thus subjected the earmarked fund to proper charges payable out of it in subsequent years. The payment of the Federal income taxes constituted a true and proper charge against income. Any income in the hands of the executors was required to be first exhausted before principal might be invaded. " The net income is ascertained by subtracting expenditures allocable to income from receipts allocable to income. * * * Ordinary current expenses in connection with the administration and management of the trust are payable out of income. These include regularly recurring taxes assessed against any portion of the principal, water rates, premiums on insurance against fire or other casualty, interest on mortgages and other indebtedness, ordinary repairs, and the trustee's commissions computed upon income." (Restatement of the Law of Trusts, § 233.)

It is a long-established rule of the law of trusts that all appropriate charges against income must be borne by the life tenant and that the corpus of the trust estate shall remain intact until the trust shall have terminated. (*Matter of Albertson*, 113 N. Y. 434.) It is stated in *Matter of Jackson* (258 N. Y. 281, 288): " The general rule is that the capital of a trust fund should not be impaired by carrying charges unless the intent of the donor may clearly be inferred."

Previously in *Matter of Albertson* (*supra*) the Court of Appeals wrote: " To change the general rule that, as between the life tenant and the remainderman, the former is bound to pay the taxes imposed, and the interest accruing upon a mortgage, a very clear expression of such an intention on the part of the testator must be found in his will. The usual purpose of the testator in providing for a beneficial interest in a trust estate is, that the net income shall be applicable only, and that the *corpus*, or capital, of the trust estate shall remain intact until the trust shall have determined. The principle has been so long and firmly established that interest on mortgages, taxes, repairs and all those current expenses, which are fairly incidental to the maintenance of the realty used by a life tenant, are payable by him, that it should be adhered to upon all occasions, unless, in so doing, we violate a plain direction to the contrary; which, if not found in the will in so many words, yet is the only one which a fair and reasonable construction permits of our finding."

Under these rules only net income is applicable to the beneficiary. The direction in a will to justify a change of these rules must contain " words of the most unmistakable import and pointing unequivocally in that direction." (*Matter of Albertson, supra.*) No such indication can be found in the will of the testator here.

In cases involving real estate, interest on mortgages, taxes and other carrying charges thus become chargeable against income. In trusts involving realty, or personalty and realty, or personalty only as is the case here, there may be additional charges against income for the premium on the bond of the trustee, income taxes, income commissions and other proper current charges. These rules set forth in *Matter of Albertson* were restated and applied in the recent case of *Matter of Ely* (249 App. Div. 8), which was affirmed by the Court of Appeals (274 N. Y. 501). There the executors, who were also acting as trustees, attempted to charge the cost of substantial and extensive repairs on real estate out of the principal of the trust. The will contained no such authority. The Appellate Division held such charges must be paid out of income, and that the trustees were without authority " to take moneys from the principal of the estate for such purposes." (See, also, *Matter of Gaffers*, 254 App. Div. 448, 452; *Matter of Young*, 17 Misc. 680; affd., 15 App. Div. 285; affd., 160 N. Y. 705.)

The decisions relating to the apportionment of the proceeds of unproductive real estate have no application here.

No hardship was suffered by Mrs. Butler during the period from December 31, 1931, to the end of the year 1936, for during that period she received the mandatory amount of income directed to be paid to her at the rate of $72,000 per year.

As stated above, the total amount of the deficits in income for the years 1933 to 1936 amounted to $164,991.11. By applying the earmarked surplus income of $81,527.51 as a payment on account of these deficits the invasion of principal has been reduced to $83,463.60. If the contention of Mrs. Butler was sustained and the previously earmarked income now paid over to her, the total invasion of principal would be increased to the foregoing sum of $164,991.11.

It would be contrary to equity to permit Mrs. Butler to be paid income which might appear to be surplus income as early as the end of 1931, but which was wiped out by subsequent charges which income was bound to bear. Unjust enrichment would result to her as against the remaindermen of Trust C. Her application on this phase of the case is, therefore, denied.

The contention raised on behalf of Donald Bloomingdale and Rosalie B. Bloomingdale that Mrs. Butler should be compelled to

restore the further sum of $20,000 as surplus income paid to her during the period of the second accounting is overruled. The surrogate holds that this payment was ratified by the decree dated May 10, 1937, which was made in the accounting proceeding. The decree is, therefore, *res adjudicata* upon this point.

*Second.* Various applications for attorneys' fees have been made by the attorneys for the respective executors. Mr. Reese, an executor, seeks compensation out of the estate under section 285 of the Surrogate's Court Act, for his professional legal services rendered aside from his executorial duties. He also asks that there be included in that allowance compensation for the professional services of his associates rendered during the period of the third account. The allowance requested is $90,000. The surrogate, after careful analysis of the extensive services rendered, fixes the sum of $38,500 as the reasonable compensation of Mr. Reese, Mr. Lindsay and their associate in this group of legal work. That amount constitutes a proper estate charge. In the fixation of that amount there has been applied the tests of value laid down by the leading case of *Matter of Potts* (213 App. Div. 59; affd., 241 N. Y. 593). " In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." Those tests have likewise been applied to the remaining allowances hereinafter made to all the attorneys. In each case also the surrogate has awarded adequate reasonable amounts to the attorneys with due consideration for the rights of the beneficiaries.

For the legal services rendered during the period of the supplemental account Mr. Reese and his associates seek compensation in the sum of $75,000. It was in this period that Mrs. Butler and her attorney engaged in an intensive and ceaseless campaign of litigation. Attack was made by her upon decrees made in 1931 and 1937 in the two prior accounting proceedings in which she obtained the judicial settlement of her own accounts and through which she sought and was paid her commissions. Her application to vacate these decrees was discontinued by her on the date set for trial. Attack was also made by her upon the decree made on June 15, 1936, which provided for the payment of income to the life tenants of the trusts, including herself. Under it she received a large amount of income. Her present attorney had expressly consented to the making of the decree. He had been recommended to her by the executor Mr. Reese and his associate attorney to represent her individually in the proceeding involving the construc-

tion of the will. The spirit of friendship in which the recommendation was made, however, appears to have met with a complete change of mind on the part of her present attorney and of his client out of which grew the bitter litigation which has gone on in this estate during the past eighteen months. The proceeding to vacate this consent decree of June 15, 1936, was also discontinued by her upon the date set for trial.

A further attack was made by Mrs. Butler upon the decrees which originally granted letters testamentary and letters of trusteeship to Mr. Reese who had been nominated by Mrs. Butler herself for appointment, under the terms of the will, as her coexecutor and cotrustee. Involved in this proceeding was an attempt to remove him as executor and trustee of the estate upon charges of fraud, imposition, overreaching and other grounds. This proceeding was likewise discontinued by Mrs. Butler through her attorney on the date set for trial. In the present proceeding everyone of these charges against Mr. Reese, in so far as they were involved in objections to the accounts, proved to be groundless and without foundation in law or in fact.

The reasonable cost of defending an attempted removal or other attack on the status of a fiduciary is a proper charge payable out of the estate. (*Jessup* v. *Smith,* 223 N. Y. 203, 207.)

Space does not permit a detailed recital of the very many intermediate motions made in these futile proceedings. It is sufficient to say that the voluminous records of this court, which are in evidence, show the complications and the extent of these applications and the very many decisions of the surrogate disposing of them. Legal services in this group included the defense of these unnecessary and futile proceedings brought by Mrs. Butler and also those rendered in the administration of the estate and in the preparation of the third account and in other matters. Compensation in the sum of $75,000 is sought by Mr. Reese and his associates for this group of services. The surrogate finds that the cost of these services is properly chargeable out of the estate and that their reasonable value is the sum of $40,000.

Further claim is made by the firm of Cadwalader, Wickersham & Taft who acted as attorneys and counsel for Mr. Reese during the period covered by the supplemental account in certain phases of the intensive litigation just referred to and in other matters covered by the testimony of attorneys connected with that firm. Request is made for the sum of $70,000. The surrogate finds the reasonable value of these services chargeable out of the estate to be $25,000. An additional claim was made for $3,000 for the fees of accountants who assisted in the legal work. These services, however, were

rendered by assistants included in the regular office staff of the firm of attorneys. The claim is similar to requests sometimes made by attorneys for the services of their own stenographers and typists. Requests for the latter form of allowances, either as disbursements or items of expenditure, have been denied without exception by the various surrogates. The services of a regularly employed stenographer or a regularly employed accountant or bookkeeper may be considered as elements in fixing the compensation of an attorney or a firm of attorneys. Such items are really part of the overhead of a modern law office. Consideration of them has been given by me in the fixation of the compensation of this firm of attorneys as above allowed.

All of the foregoing allowances are found by the surrogate to have been based upon services rendered for the benefit of the estate and for the protection of the beneficiaries of the estate, both life tenants and remaindermen.

Mr. Arthur T. O'Leary requests compensation payable out of the estate for services which he claims he rendered to the executrix, Mrs. Butler, for the benefit of the estate. In addition reimbursement is sought by her for partial payment made to her attorney out of her individual funds. His first claim is for services rendered in the second accounting proceeding wherein certain of the beneficiaries attempted to secure a determination denying her commissions because of her failure to participate in the duties of an executrix. Commissions in the sum of $53,819.59 were ultimately awarded to her by the surrogate, upon findings made by the referee. For collecting this item her attorney seeks compensation in the sum of $25,000 payable out of the estate. These services were rendered before the outbreak of the differences which arose between the executrix and the executor. After careful consideration of the services rendered in the examinations before trial, and the few days of trial before the referee, and the proceedings before the surrogate on the confirmation of the report of the referee, and the short memorandum submitted by counsel, the surrogate fixes as reasonable the sum of $2,500. Of this amount $1,000 becomes payable to Mrs. Butler since she advanced that amount to Mr. O'Leary, her attorney, and the balance of $1,500 is directed to be paid to Mr. O'Leary.

Further compensation is sought by Mr. O'Leary for services rendered during the period of the supplemental account in the sum of $17,500. The surrogate has eliminated as a proper basis of compensation any services rendered in futile and unsuccessful proceedings because they were of no benefit to the estate. They actually caused detriment and financial damage to the beneficiaries

because of the necessity for compensating the attorneys who successfully resisted the various proceedings. Under this group, therefore, the award of compensation will be confined to the following items in which the surrogate finds the services were of some value to the estate.

For the proceeding for the setting up of Trusts A-1, A-2 and B there is requested by the attorney for Mrs. Butler the sum of $3,000. There will be allowed $1,500. In this proceeding considerable effort was devoted by the attorney to evade the decision of the Court of Appeals in the setting up of Trust B of which Donald Bloomingdale, the son of the testator, was the life beneficiary. Although the Court of Appeals in the construction proceeding had upheld his status as in the nature of a creditor of the estate under an agreement made by the testator in his lifetime to set up a trust of $2,000,000 in cash, the attorney for Mrs. Butler attempted to defeat the mandate of that court and the directions in the agreement and the will by persistent efforts to compel the setting up of a trust in securities valued as of the date of death, which would have deprived Donald Bloomingdale, the life beneficiary, of the income upon a fund of $1,200,000. In other words, under the scheme as proposed the trust would have amounted to $800,000 instead of $2,000,000 and the will as judicially interpreted would have been defeated to a substantial extent.

For services in the proceeding brought by Rosalie Banner Bloomingdale for the payment of her income there is asked the sum of $350. There will be allowed the sum of $150.

For the proceeding to compel payment of the income to Donald Bloomingdale there is asked the sum of $3,250. Again in this proceeding most of the services rendered involved an attempt to evade the clear and explicit commands of the Court of Appeals. There will be allowed the sum of $500.

For the services rendered in the proceeding on the remittitur of the Court of Appeals there is asked the sum of $4,000. Here again most of the services were rendered in attempting to defeat the mandate of the Court of Appeals and in resisting allowances to the executor and the attorneys for the successful parties upon the appeal. It may be said in passing that the allowances made by the surrogate in that proceeding approximated the amounts paid by Mrs. Butler for the services of her own attorney which were wholly unsuccessful in the Court of Appeals. The surrogate fixes as the reasonable allowance for the services in the proceeding on the remittitur the sum of $500.

In the proceeding brought to reduce the amount of the surety bonds given by the executors and trustees there is sought the sum of $1,000. There will be allowed the sum of $500.

For other miscellaneous services during the period of the supplemental account the attorney asks the sum of $3,800. The surrogate finds the reasonable value of such services as were rendered for the benefit of the estate to be $1,000. Most of the work of the attorney for Mrs. Butler here involved was unnecessary and of no advantage to the estate and was a duplication of the work of the attorneys who had represented both the executor and executrix in prior years. It consisted of an examination of the executor, Mr. Reese, extending over nineteen days. Other services involved the preparation and filing of objections by Mrs. Butler to the third account of Mr. Reese. With the exception of a few conceded clerical errors all of such objections have been overruled by the surrogate. The services both upon the examination of the executor before trial and the preparation of objections were, therefore, of not the slightest benefit to the estate and on the other hand resulted in serious expense and detriment to it. In the great majority of estates a single attorney or firm of attorneys is employed to represent the executors or other fiduciaries. That system results in harmony, expedition and the avoidance of unnecessary expense. It is, however, the legal right of each representative of the estate to employ separate attorneys. The practice of allowing excessive fees to each attorney in that situation has been discouraged by the surrogates. It inevitably leads to an attempt to increase the cost of legal services in the administration beyond the amount which would be deemed reasonable for the services of a single attorney representing two or more fiduciaries. (*Matter of Burroughs*, 155 Misc. 237; *Matter of Kentana*, 170 id. 663.)

The total reasonable allowance for Mr. O'Leary's services under this group, for which $17,500 is sought, is, therefore, fixed at the sum of $4,150. Since Mrs. Butler appears to have paid out of her personal funds a sum to Mr. O'Leary in excess of that amount, reimbursement to her is directed in that amount.

The balance of $2,100 of Mr. O'Leary's claim for compensation in this group for services in the unnecessary and unsuccessful litigation is disallowed upon the ground that the services rendered were of no value to the estate and were rendered for the individual benefit of Mrs. Butler. A representative of an estate cannot gratify a taste for fruitless litigation at the expense of the estate.

In the request of the executrix for reimbursement for $125.50 for the cost of certain stenographic minutes, the sum of $42 is allowed for the minutes of the proceedings upon the remittitur of the Court of Appeals. The remaining items of $83.50 are disallowed as involving proceedings which were of no benefit to the estate.

Claim is made by the attorney for Mrs. Butler for the further sum of $15,000 for the services of himself and an associate law firm in attempts to recover payments for Federal income taxes. The agreement of retainer was made with the executrix but without authorization from the executor. The agreement of retainer of Mrs. Butler as executrix provides for the payment of a percentage of the amounts recovered. It was stated to have been made because of the estate being insolvent. The assets of the estate including those already allocated to the trusts were valued at the time of the setting up of the trusts ten months ago at approximately $5,000,000. There may have been some decline in value due to the existing war conditions, but in any event there are ample funds within the estate to meet any reasonable charge for services rendered without recourse to a contingent agreement made by one fiduciary only. The attorneys upon the trial of this proceeding stood upon their contingent agreement and refused, at the close of the trial, to submit to an allowance based upon *quantum meruit* which must be the ultimate test of a contract of employment of an attorney by the fiduciary of an estate. (*Matter of Meng*, 227 N. Y. 264; *Matter of Reisfeld*, Id. 137; *Matter of Gilman*, 251 id. 265.) In view of this attitude of the attorneys, and because of their rejection of an allowance by the surrogate based upon reasonable value, their claim for services rendered in the income tax matter must be denied upon the merits.

*Third.* The question of the allowance or disallowance of commissions to the executor and executrix is next presented for determination.

No evidence whatsoever has been adduced in support of the objections of Mrs. Butler to justify the denial of commissions as executor to Mr. Reese. The surrogate finds upon the other hand that his conduct has been in all respects honest, zealous and directed towards the protection of the beneficiaries. Commissions are, therefore, allowed to him. Disposition as to the exact computation of certain commissions claimed to be due him upon income has been reserved for the settlement of the decree. A date for hearing has been hereinafter set for the purpose of taking testimony upon that question.

In the exercise of the discretion of the surrogate, commissions will be disallowed to Mrs. Butler as executrix. The surrogate finds upon the evidence various grounds of misconduct requiring the denial of commissions to her. The following grounds have been established by the evidence:

(a) The fomenting of vexatious and unnecessary litigation resulting in waste of the estate funds and in financial damage to the

beneficiaries by the necessity for paying the executor and his attorneys reasonable compensation for the defense of such litigation. Furthermore, certain of the beneficiaries have been compelled to pay their own attorney without reimbursement from the estate for these unnecessary proceedings brought by the executrix.

(b) Willful and persistent disobedience of the mandate of the Court of Appeals rendered in the proceeding for the construction of the will, and particularly of the explicit directions of that court for the method of setting up the trust for Donald Bloomingdale based upon his legal status to enforce liability against the estate on the obligation assumed by the testator in his lifetime.

(c) Willful disobedience of the order of the surrogate requiring the executrix to account, which involved the filing by the executrix of accounts and supplemental accounts contrary to the law and procedure of this court.

(d) The making of an improvident contingent agreement by the executrix with her attorney whereby the interests of other beneficiaries were attempted to be subjected to an excessive absolute amount of compensation and in addition an excessive and improper percentage agreement which, by its terms, exempted the executrix from any legal liability to bear her own share of such attorney's fees. (*Matter of Gilman*, 251 N. Y. 265; *Matter of Reisfeld*, 227 id. 137.)

(e) Willful refusal to co-operate with her coexecutor and the making of charges of fraud and imposition and overreaching against him which have been proved to be false, unwarranted and groundless by the evidence in this proceeding. In addition there has been open and unjustified hostility by the executrix towards her coexecutor in the filing of voluminous objections to his accounts. These objections have been proved to be false and without support in law or in the evidence.

(f) Willful and continued refusal over a long period of time to pay two of the beneficiaries of the estate the amounts due them as income under the terms of the will.

(g) The improper demands of the executrix for reimbursement for items of disbursement of her attorney and accountant set forth in her account and disallowed by the surrogate in the sum of approximately $7,500. Many of these items attempted to be collected out of the estate arose in the proceedings to vacate decrees or to remove the executor and trustee and other proceedings which fall within the class of unnecessary and vexatious litigation and the assertion of unjust and unreasonable claims by a fiduciary.

The power of the surrogate, in his discretion, to deny commissions to a fiduciary who has been guilty of acts of misconduct was recog-

nized by the Court of Appeals in *Matter of Rutledge* (162 N. Y. 31). That case followed and applied the rule earlier laid down in *Stevens v. Melcher* (152 N. Y. 551, 583). In the latter case a denial of commissions by the lower court was permitted to stand. The executrix " had promoted unnecessary and vexatious litigation and had insisted upon unjust and unreasonable claims " and had " made frequent and unexplained changes of counsel, whereby the trial of this action has been greatly prolonged, and other parties interested in the estate have been put to great expense and delay in obtaining a settlement, and that by reason of her misconduct she should not be allowed commissions." This statement applies with particular force to the conduct of the executrix in the pending proceeding. Further reference was made by the Court of Appeals in *Stevens* v. *Melcher* (*supra*) to its decision in *Cook* v. *Lowry* (95 N. Y. 103, 114) where Judge ANDREWS in his opinion says: " Commissions are allowed to trustees as a compensation for services in the execution of the trust, and in a case of gross neglect or of unfaithfulness, we think the court may properly disallow them." Again the Court of Appeals in *Matter of Bushe* (227 N. Y. 85, 90) stated that " a surrogate may, in his discretion, refuse commissions altogether by reason of an executor's or trustee's misconduct."

A comprehensive review of the decisions bearing upon the grounds of misconduct which justify the denial of commissions to a fiduciary may be found in the opinion of Surrogate WINGATE in *Matter of Taft* (145 Misc. 435). In *Matter of Matthewson* (8 App. Div. 8) the court found that the management of the estate had been prejudicial to those entitled to the residue and remainder of it. Commissions were denied upon these grounds and upon the ground that the services of the trustee should " have been performed in such a manner as those interested in the residue of the estate had a right to expect. These services have not been so performed, and we think that these parties should not be called upon to pay from this estate the commissions of this trustee. To allow commissions under such circumstances would be countenancing and abetting negligent acts of this trustee in the management of this estate."

In *Matter of Ellis* (176 App. Div. 425) there are observations in the formal opinion of the court which indicate that the fomenting of litigation and other causes might afford a ground for denial of commissions. That opinion was not concurred in by the majority of the court. The grounds of misconduct in the present case, however, are far more sweeping than those in *Matter of Ellis* and require a different conclusion here from that reached by the majority of the court in the *Ellis* case.

In the present proceeding the surrogate finds upon the evidence that there was a deliberate intention to injure the other life bene-

ficiaries and remaindermen and to deplete the funds of the estate with an actual damage resulting from such intention in at least the sum of $50,000 representing the reasonable allowance for counsel fees in defending the unnecessary litigation. It is difficult to conceive of the objectives of the executrix and her attorney in fomenting all the numerous, unwarranted and unsuccessful proceedings. It is reasonably observable, however, that at least one motive of the executrix was her hostility towards the former wife of the testator and to his son by that marriage. It is also reasonably inferable that much of this litigation was instigated with a definite hope and expectation of creating a basis for excessive and unjust charges for attorneys' fees payable out of the estate.

As evidence of the disobedience of the executrix in failing to comply with the directions of the surrogate for the filing of her accounts in proper and accurate form, the following sequence of dates is important. By decision of the surrogate (N. Y. L. J. Jan. 3, 1939, p. 9), the executrix was directed to file an account of all of her transactions during the period of the third account of the executor and the additional period covered by his supplemental account. These accounts were filed on February 14, 1939. The accounts were defective and did not comply with the statutory and procedural rules requiring the setting forth of the expenses alleged to have been incurred by the executrix for attorneys' fees and disbursements to the final date of the period of the supplemental account. Thereupon an application was made by the executor to compel the filing of proper amended schedules to the supplemental account setting forth specific items claimed by the executrix as reimbursement for counsel fees and disbursements. The application was granted by the surrogate in an extended decision containing specific instructions to the executrix. (N. Y. L. J. April 25, 1939, p. 1892.) Improper amended schedules were again filed on May 12, 1939. They failed to comply with the decision of the surrogate and the order entered thereon. By further decision made by the surrogate (N. Y. L. J. May 27, 1939, p. 2454), the specific directions to the executrix were repeated. Finally, on June 1, 1939, pursuant to that decision further amended schedules setting forth the items claimed in reimbursement by the executrix were filed. This disobedience and delay on the part of the executrix postponed the completion of the administration of the estate and the setting up of the residuary trust, Trust C, under the will. In the opinion of Judge RIPPEY in the construction proceeding in the Court of Appeals (278 N. Y. 435, 448), it was stated: " The mandate of the testator to set up the trusts provided for in the will and codicil should have been long since complied with." It thus required a

period of months to enforce the filing by the executrix of an account which might be judicially settled in proper form. During this period the executrix attempted to defer the fixation of counsel fees and disbursements upon the alleged basis that she had made a contingent agreement with her attorney for services during the accounting period. The exact terms of that agreement were not revealed until the filing of a copy on June 1, 1939.

Circumstances arising in the administration of an estate may justify the making of a contingent agreement by the fiduciary with an attorney. The ordinary example of such a situation occurs where there is a right of action for damages, due to the death of the decedent, with no other assets in the estate. In other cases the contingent nature of the claim justifies the making of a contingent agreement. In the ordinary administration of an estate, however, where there are ample assets sufficient to pay the attorney in the event of the failure or success of his efforts, the making of contingent agreements should be discouraged. Moreover, under the very clearly defined rules laid down by the decisions, the terms of the agreement in so far as they affect the rights of beneficiaries, other than the fiduciary, are subject to a determination by the surrogate as to what is reasonable compensation for the services rendered. This amount must be determined entirely aside from the percentage or fractional, or absolute share fixed in the contingent agreement of the executor or administrator. " Upon his own interest " the fiduciary may " impose any lien that he pleased." Upon the interest of a non-assenting beneficiary, the fiduciary " could not lay a charge beyond the limits of the reasonable." (Cardozo, J., in *Matter of Reisfeld*, 227 N. Y. 137, 139.) " The authority of the executor or administrator, defined and delimited by the statute, did not empower him to expend or agree to expend for the compensation a greater sum " than the suitable and reasonable compensation and expenses. (*Matter of Meng*, 227 N. Y. 264, 270.) In *Matter of Gilman* (251 N. Y. 265) Chief Judge Cardozo restated these rules as to the making of a contingent agreement, its effect, the judicial method of the fixation of the compensation of the attorney and the right of the remaindermen of the estate to obtain credit where compensation was paid out of estate funds, or to obtain reimbursement where compensation was paid out of individual funds. " In thus holding, we are not to be understood as indicating a belief that the sum fixed by the retainer must be accepted by the surrogate as a sound estimate of value. Whether it should be accepted or rejected is for the trier of the facts. An administratrix or other fiduciary may not bind the estate by a promise to pay a fee beyond a reasonable sum. (*Matter of Reisfeld*,

227 N. Y. 137, 139, 140.) This is so whether compensation is unconditional or contingent. ' The fee may be made contingent (*Lee* v. *Van Voorhis*, 78 Hun, 575; 145 N. Y. 603); its size may be increased because of the contingency; but none the less, the bargain must exhibit a measurable degree of providence in the adjustment of reward to service ' (*Matter of Reisfeld, supra*). The trier of the facts must say whether these precepts were obeyed." (*Matter of Gilman, supra*, p. 274.)

In the pending case the surrogate holds, as the trier of the facts, that the contingent agreement made by the executrix with her attorney was improvident. It attempted to fix the sum of $35,000 as an absolute amount payable out of the estate funds whether the attorney was successful or failed in restoring certain funds to the estate, and, particularly to Trust C. It attempted to fix the compensation not only for services rendered during the period of the accounts here involved, but also for services rendered upon the appeals from certain decrees made in that period. It further provided that in addition to the aforesaid sum of $35,000, the attorney was to be entitled to twenty-five per cent of certain contemplated recoveries which could only result for the personal benefit of Mrs. Butler as life beneficiary of Trust C. It attempted to give a credit to the executrix personally for the sum of $20,000 paid out of her individual funds. Finally it provided if the contingent agreement was "held not to be enforceable or allowable as a charge against the Estate assets," that the attorney would not look to the fiduciary or seek to hold her liable in her personal capacity for any charges for services except those that the executrix might voluntarily pay to the attorney. Exoneration was, therefore, sought by the executrix of any liability against herself and an attempt made to impose upon the shares of other beneficiaries excessive and unreasonable charges. It should also be stressed that this agreement was made by the executrix without consultation with or authority or consent from her cofiduciary. The making of this agreement was a powerful incentive to fomenting wasteful litigation. This direct effect has already resulted and will continue because of the numerous appeals taken by Mrs. Butler. It has also been demonstrated that most of the services comprehended by this retainer agreement were rendered or to be rendered for the benefit of the executrix in her individual capacity and without advantage to the estate generally.

The surrogate, as the trier of the facts, under the tests laid down in *Matter of Gilman (supra)*, finds that the making of this contingent agreement was improvident and one of the grounds of misconduct for the denial of commissions to her.

Additional authorities in which the misconduct of a fiduciary justified a denial of commissions or the imposition of costs, expenses and allowances as a personal surcharge against such fiduciary may be found in *Matter of Hidden* (243 N. Y. 499) and *Matter of Garvin* (256 id. 518).

*Fourth.* The separate intermediate application of Mrs. Butler for the payment of accrued income at the monthly rate fixed in the will is granted, subject, however, to the payment out of the funds and property in the hands of the executor and executrix of all prior and preferred charges for administration expenses and the retention of a reserve for debts and a reserve for further administration expenses. The payment in money of Mrs. Butler's accrued monthly income must necessarily be deferred because of the present financial condition of the assets remaining in the hands of the executor and executrix and the present lack of cash available to pay the statutory preferred charges. If the executor or the attorneys, as indicated by some of them upon the trial, or Mrs. Butler, as life beneficiary, are willing to accept securities in kind in satisfaction of the amounts due them under this decision, and if they file written consents evidencing such willingness, determination will be made by the surrogate as to the fair market value of such securities upon the settlement of the decree.

*Fifth.* In conclusion a summary of the rulings of the surrogate upon all of the objections filed to the various accounts is set forth. (Here follows a summary of all the rulings of the surrogate upon the many enumerated objections. These rulings are set forth in the filed decision of the surrogate, but are omitted from publication in this decision because they are of importance only to the attorneys and persons interested in the estate.)

Submit decree on notice settling the accounts of the executor and executrix in accordance with this decision.

A hearing on the question remaining open as to the determination of the right of the executor, Mr. Reese, to commissions on income, and as to whether they have been waived by him, is set for the 5th day of October, 1939, at ten-thirty A. M.