THE SEITZ ESTATES, INC., Plaintiff, *v.* IDA C. SEITZ, Defendant.

First Department, June 18, 1929.

*M. A. Willment* of counsel [*Hill, Lockwood & Redfield*, attorneys], for the plaintiff.

*Hamilton M. Dawes*, for the defendant.

MERRELL, J. The question presented by this controversy is as to the marketability of plaintiff's title to real property contracted by plaintiff, a domestic corporation, to be sold to defendant. The defendant rejected the title offered upon the ground that there was an undivided one-quarter interest in the fee of the contracted premises outstanding in one Walter R. Seitz, a non-resident incompetent person.

Title to the real property in question was originally in one Charles E. Seitz, who died intestate on May 23, 1917, a resident of the county of Richmond, State of New York. At the time of the death of Charles E. Seitz he was the owner in fee of certain parcels of real property situate in the counties of Bronx, Richmond and Suffolk, in this State. Decedent left him surviving a widow, Anna M. Seitz, and four children, namely, Oscar R. Seitz, Charles A. Seitz, Ida C. Seitz, the defendant herein, and Walter R. Seitz, an incompetent person, as his sole heirs at law. The widow of decedent

died March 19, 1920. At no time during her life was her dower in any of said real property admeasured or set off to her, and upon her death all her dower interest in said real property lapsed. The three-quarters undivided interest in each of said parcels of real property, which, upon the death of their father, vested in his three children, Oscar, Charles and Ida, is now vested in fee in the plaintiff. Walter R. Seitz, the incompetent son of decedent, was, for many years prior to 1925, a resident of Zurich in the Canton of St. Gall, Switzerland.

It was further stipulated by the parties to this controversy that on November 27, 1925, in a proceeding duly instituted in the Guardians Court of the city of Zurich, wherein it was alleged amongst other things that the said Walter R. Seitz was a resident of Zurich, the said Guardians Court adjudged that the said Walter R. Seitz was a resident of Zurich, Switzerland; that he was suffering from a mental disease known as catatonic form of dementia præcox, and in consequence of such serious mental defect was totally incapable of managing his affairs, and appointed Johannes Seitz, a resident of Switzerland, as guardian; and that such adjudication was ratified by the district council of Zurich on December 17, 1927; and that on or about November 10, 1926, the County Court of the county of Richmond, purporting to act pursuant to the provisions of section 1363 of the Civil Practice Act, appointed the said Ida C. Seitz, a resident of the county of Richmond, State of New York, committee of the property of the said Walter R. Seitz within the State of New York; that the said foreign committee of the said Walter R. Seitz concurred in the petition for the appointment of the said Ida C. Seitz by filing an affidavit in which he said " as his [the incompetent's] uncle, I should feel that his sister Ida and his brother Charles are the ones that can best care for and administer to Walter's [the incompetent's] wants; " that the said Ida C. Seitz accepted said appointment and duly qualified thereunder; that on or about June 21, 1927, the City Court of the City of New York, county of Richmond, accepted the resignation of the said Ida C. Seitz as committee of the said incompetent, and appointed the Guaranty Trust Company of New York committee in her place and stead, and the said Guaranty Trust Company of New York accepted such appointment and duly qualified and has since acted and now is acting pursuant to such appointment; that thereafter, on due notice (prescribed by the court) to all persons interested, the Guaranty Trust Company of New York, as such committee, presented a petition to the Supreme Court, Kings county, for an order authorizing it as such committee to sell the undivided interest of the said incompetent in the said real properties, and further

authorizing it as such committee to convey the incompetent's undivided interest therein to the plaintiff in exchange for stock of the plaintiff; and the said court thereupon appointed a special guardian to represent the said incompetent in said proceeding and a referee to inquire into the merits of such application, examine the petition, hear the allegations and proofs and render his opinion thereon with the testimony to the said court; that said petition stated the name, age and residence of the incompetent, the grounds of the application, the particulars and value of the real and personal property and the amount of the income of the incompetent, the disposition which had been made of his personal property, and an account of the debts or demands existing against his estate, and further alleged that the said Charles A. Seitz and Ida C. Seitz, tenants in common with the said incompetent in the said parcels of real property, threatened to institute an action for partition of the said real property in case leave should not be granted by the court to sell the interest of the said incompetent in the said real property, and further stated the name and residence of the committee of the said incompetent and that no previous application had been made for such order; that proceedings were had before the said referee, who inquired into the merits of said application, examined into the truth of the allegations of the petition, and heard the allegations and proofs of all persons interested in the property, and that said hearings were attended by the said special guardian for the incompetent, and testimony, both written and documentary, was presented to the said referee, who thereafter filed his report, in which he reported and recommended that a sale of the incompetent's interest in the said real property in exchange for a proportionate amount of the capital stock of the plaintiff corporation would be beneficial to the incompetent, and the reasons therefor, and also ascertained and reported the value of the incompetent's interest in each separate lot or parcel, with the incumbrances thereon, and that there was no person entitled to dower or a life estate or estate for years therein, and the terms and conditions on which it should be sold; that the facts in relation to the value of the incompetent's interest were proven before said referee by the testimony of two disinterested persons, and the report did not refer to the petition or any other papers as evidence of fact; that thereafter the said court entered an order confirming the report of said referee and authorizing and empowering the Guaranty Trust Company of New York, as such committee, to contract for the sale and conveyance of all right, title and interest of said incompetent in the said real property to the plaintiff in exchange for a proportionate amount of the capital stock of the plaintiff; that thereafter the Guaranty Trust

Company of New York, as such committee, contracted for the sale of the undivided interest of the said incompetent in said real property in exchange for a proportionate amount of stock of the plaintiff; that thereafter the said court confirmed said agreement and ordered that the interest of the said Walter R. Seitz in said real property be conveyed by the Guaranty Trust Company of New York, as such committee, to the plaintiff in exchange for a proportionate amount of the capital stock of the plaintiff; that thereafter the Guaranty Trust Company of New York, as such committee, executed, acknowledged and delivered in the name of and for the said incompetent a deed good and sufficient in form to convey all the estate, right, title and interest of said incompetent in the said premises to the plaintiff and received in exchange therefor a proportionate part of the capital stock of the plaintiff, and that thereafter the said Guaranty Trust Company of New York, as such committee, so reported to the said Supreme Court, Kings county; that on November 25, 1927, the Supreme Court entered an order ratifying and confirming the said report.

It is further stipulated that on or about March 27, 1929, plaintiff entered into a contract to sell to defendant a parcel of said real property of which said Charles E. Seitz died seized and possessed, described as follows: "All that lot or parcel of land in the Borough of Bronx of the City of New York in the State of New York and shown and designated on a map entitled ' Map of Morris Park situated in the Borough of Bronx of the City of New York ' Sections 1, 2, 3 and 4 made by Leonard C. L. Smith, City Surveyor, and filed in the office of the Register of New York County on May 28, 1913, under the map numbers 1745, 1746, 1747 and 1748 by the lot numbers 9, 10, 11, 12 and 13 in block number 56, the said lots being also known as lot number 14 in block number 4298 on the tax map of the City of New York, Borough of Bronx."

Thereafter defendant rejected title to said premises on the ground that there was an undivided one-quarter interest in the fee thereof outstanding in the said Walter R. Seitz, and notified the plaintiff in writing that the grounds of defendant's rejection of title were, first, that the court had no authority under section 1363 of the Civil Practice Act to appoint either the said Ida C. Seitz or the Guaranty Trust Company of New York committee of the property of said Walter R. Seitz, the incompetent, and that under section 1363 of the Civil Practice Act the court could only appoint the foreign committee; that there was no authority in law for the practice adopted on the application for leave to sell the interest of the incompetent and that the entire proceeding was invalid, and that the order entered therein directing the conveyance of the interest of the

incompetent in exchange for stock of the plaintiff was void; that the court could not entertain an application to exchange the incompetent's interest in the real property in question for stock of a corporation to which the premises were about to be conveyed, and that the court could not entertain an application under section 116 of the Real Property Law until after a proceeding brought in conformity with article 82 of the Civil Practice Act had resulted in an order authorizing a sale of the incompetent's interest; that no such order was made, and that no power to sell, as contemplated by article 82 of the Civil Practice Act, was given; that the attempt to combine the proceedings for leave to sell the incompetent's interest under article 82 of the Civil Practice Act with the proceedings under section 116 of the Real Property Law for the exchange, with the approval of the court, of the incompetent's real property for stock of the corporation, was unauthorized.

It is the contention of defendant that her appointment as committee of the property of the said Walter R. Seitz and the appointment of the Guaranty Trust Company of New York in her place and stead as such committee were illegal, invalid and void and unauthorized under section 1363 of the Civil Practice Act, the defendant contending that the only authority conferred by said section was to appoint the foreign committee to act here.

Upon the stipulated facts the plaintiff demands judgment that the defendant be adjudged to specifically perform her agreement to purchase the aforesaid premises; while the defendant refuses to perform, claiming that she is entitled to judgment for the return of the sum of $500 paid by her upon the execution of the contract for the purchase of said real property. The controversy, therefore, before us for decision is whether, upon the stipulated facts, the plaintiff is entitled to judgment requiring the defendant to specifically perform her said agreement and to accept the plaintiff's deed and pay plaintiff the sum of $500, with interest thereon from April 10, 1929, and deliver to plaintiff a purchase-money bond and mortgage for $3,595, as provided in the contract of sale; or whether the defendant is entitled to judgment against plaintiff for the sum of $500, paid on the execution of said agreement, with interest thereon from March 27, 1929. The parties agree that this court shall render such judgment as shall be proper on the aforesaid facts, without costs.

We are of the opinion that the plaintiff is entitled to judgment against the defendant requiring the defendant to specifically perform the contract into which she entered. Prior to the enactment of section 2326 of the Code of Civil Procedure (now section 1363 of the Civil Practice Act) there was no authority in the court to

appoint a committee other than a resident of the property of an incompetent non-resident. By the enactment of such statute it was provided that " Where the person alleged to be incompetent resides without the State, and a committee   *  *  *  of his property  *  *  *  has been duly appointed pursuant to the laws of any other  *  *  *  country where he resides, the court may, in its discretion, make an order appointing the foreign committee *  *  *  the committee of  *  *  *  the property of the incompetent person, within the State  *  *  *."  (See Laws of 1880, chap. 178, § 2326, as amd. by Laws of 1898, chap. 294.) In our opinion section 2326 of the Code of Civil Procedure (now section 1363 of the Civil Practice Act) merely granted authority in the court in its discretion to appoint the foreign committee as committee of the property of the incompetent within the State of New York. The present statute provides that the court " may make an order appointing the foreign committee." There is nothing in section 1363 in anywise curtailing the authority of our courts to appoint a resident committee of a non-resident incompetent person. The practice of appointing a resident committee of a non-resident incompetent has been followed in a number of decisions of the courts of this State. (*Matter of Bartelme,* 34 Misc. 131; *Matter of Ricker,* 89 id. 582.) While the decisions above cited were made at Special Term, no appeal was taken from either of said decisions, and, so far as we know, the procedure there adopted has never been questioned in this State. In *Matter of Ricker* (*supra*) a resident of this State was appointed committee of the property of the incompetent within the State of New York. The incompetency was judicially declared in a foreign jurisdiction, and, the foreign committee being unwilling to act in this State, a resident committee was appointed. The question raised in that case was as to whether a resident committee could be appointed under section 2326 of the Code of Civil Procedure. The court held that a resident committee could be appointed under such section, and that a new inquisition as to the competency was unnecessary, and that such new inquisition would be a mere empty form and needless expense, the same having been already established by a valid judicial record in the foreign jurisdiction. In the case before us it was stipulated that Walter R. Seitz, then a resident of Switzerland, was duly declared incompetent by the Swiss courts. The foreign committee appointed pursuant to such inquisition declined to act here and concurred in the petition for the appointment of the resident committee, filing an affidavit upon the application for the appointment of such resident committee, and therein stated: "As his uncle, I should feel that his sister Ida and his brother Charles are the ones that can best care for and administer to

Walter's wants." In support of her position as to the invalidity of the appointment of a resident committee of the incompetent, the defendant relied upon a concurring opinion of MILLER, J., in *Matter of Rollo* (152 App. Div. 165). In that case a committee in England had been appointed for an incompetent who resided in London. Upon the application of the foreign committee a resident committee had been appointed here. Thereafter the foreign committee applied here for appointment of the foreign committee instead of the resident committee. The Special Term denied the application. The Appellate Division reversed the order, not on the ground that the court could not appoint a resident committee, but on the ground that the appointment of either the foreign committee or a resident committee rested in the discretion of the court, and that under the peculiar circumstances of that case the court's discretion should have been exercised in favor of the foreign committee. Mr. Justice MILLER wrote an opinion concurring on the ground that only the foreign committee could be appointed in a proceeding brought under section 2326 of the Code of Civil Procedure. It is apparent that the other members of the court did not agree with Justice MILLER; and their decision was not placed upon the ground suggested by said justice. The Appellate Division clearly indicated that the court was authorized in its discretion to appoint either the foreign committee or a resident committee, and should be guided by the circumstances of the case in its selection. As before stated, prior to the enactment of section 2326 of the Code of Civil Procedure the courts of this State were without authority to appoint the foreign committee. They were, however, authorized to use the proceedings upon the foreign inquisition as the basis for the appointment of a resident committee. (*Matter of Neally*, 26 How. Pr. 402; *Ex parte Gillam*, 2 Ves. Jr. 587; *Matter of Perkins*, 2 Johns. Ch. 124.) Thus it seems to us that section 2326 of the Code of Civil Procedure (now section 1363 of the Civil Practice Act) merely gave to the court additional power in its discretion to appoint the foreign committee and for that purpose to use and adopt the proceedings taken in the foreign jurisdiction determining incompetency. This practice under section 1363 of the Civil Practice Act has been followed in numerous other cases. (*Matter of Rhoades*, 184 App. Div. 658; *Matter of Provident Life & Trust Co.*, 171 N. Y. Supp. 431; *Dean* v. *Halliburton*, 241 N. Y. 354.) In the case last cited Halliburton had been judicially declared incompetent in North Carolina. The New York Supreme Court appointed Emily Halliburton and the Farmers Loan and Trust Company as committee of the property in this State. While it does not appear whether

the said Emily Halliburton was a resident of this State, the Farmers Loan and Trust Company, joined with her as resident committee, was a New York corporation. No good reason appears to us why a resident committee rather than the foreign committee should not be appointed. If the foreign committee were to be appointed here said committee would be out of touch with the interests of the incompetent here. Unquestionably a new proceeding could be taken here to determine the competency of the said Walter R. Seitz, and therein a resident committee could be appointed. However, this proceeding would seem quite unnecessary and burdensome. The question of competency has already been duly passed upon and duly established in the foreign jurisdiction. If a new proceeding should be instituted here it would be necessary to take evidence in Switzerland, involving a long delay and great expense, and the jury here would be called upon to determine a question of competency without having before it the incompetent person or any witness. The foreign committee concurred in the application for the appointment of the resident committee.

We are not unmindful of the rule that in all statutory proceedings to divest title there must be a strict compliance with the provisions of the statute, but it seems to us that where there is no claim that the interests of the incompetent would be in anywise affected, the statute should, at least, be liberally construed. Where alone the interests of the incompetent are affected should strict compliance with the statute be required. (*Battell* v. *Torrey*, 65 N. Y. 294; *Atkins* v. *Kinnan*, 20 Wend. 241; *Cole* v. *Gourlay*, 79 N. Y. 527.) This court held in *Beaumont Construction Co., Inc.,* v. *Higdon Elevator Co., Inc.* (203 App. Div. 819) that title was good where the contract for the sale of the incompetent's interest was made prior to the entry of the order authorizing such contract. This court, in that case, used the following pertinent language (at p. 825): "It will thus be seen that it is not every irregularity that will render unmarketable a title acquired through judicial procedure, but only such irregularity which might reasonably affect the rights of the party, the title to whose property is thus sought to be divested." And again (at p. 826): "The court is always zealous to require strict adherence to the rules of procedure in a proceeding by which the title of real estate is divested, but the strict adherence required would seem to be as to matters which might possibly affect the interests of the parties whose property is sought to be divested, and not as to matters wherein the irregularity can in no possible aspect have prejudiced the rights of such owner." In the case before us there is no claim made that the incompetent was in any-

wise injured by combining in one proceeding a proceeding for leave to sell the interest of the incompetent under article 82 of the Civil Practice Act and for leave to exchange his interest for the stock of the plaintiff under section 116 of the Real Property Law. It appears that every step provided in each of the proceedings under article 82 of the Civil Practice Act and section 116 of the Real Property Law was faithfully taken in a single proceeding, and that the requirements of both statutes were fully met. We think the procedure adopted in combining the two proceedings in a single application for leave to sell and to accept the plaintiff's stock in payment was properly followed. All steps required by article 82 of the Civil Practice Act and section 116 of the Real Property Law were taken and the court was advised in advance of granting the order to sell that payment was to be made under section 116 of the Real Property Law in the stock of the plaintiff. The interests of the incompetent were fully protected. In the proceeding taken there was not only a substantial compliance, but an exact compliance with all of the requirements of both statutes. Due notice was given to everybody interested in the property and the facts were fully placed before the court in the original application, and it was there disclosed that the committee desired to obtain power from the court to sell and, instead of taking cash, that the property be conveyed to plaintiff in exchange for a proportionate part of its capital stock. Thus was accomplished in a single proceeding precisely what would have been accomplished had two proceedings been taken. In our opinion the title offered by plaintiff to defendant under its contract of sale was a marketable one free from any substantial defect.

Under the stipulated facts the plaintiff should have judgment directing the defendant to specifically perform her contract, and to accept the plaintiff's deed and pay to plaintiff the sum of $500, with interest thereon from April 10, 1929, and deliver to plaintiff a purchase-money bond and mortgage for $3,595 in accordance with the terms of said contract of sale. The judgment to be entered hereon shall be without costs to either party as against the other.

DOWLING, P. J., FINCH, McAVOY and PROSKAUER, JJ., concur.

Judgment ordered in favor of plaintiff in accordance with opinion, without costs. Settle order on notice.