In the Matter of the Appointment of a Committee of the Person and Property of MICHAEL T. MARSHALL, an Alleged Incompetent Person. MARY L. MARSHALL et al., Appellants; MICHAEL T. MARSHALL, JR., Respondent.

First Department, January 16, 1962.

*David G. Fusfeld* of counsel (*Jerome F. Healy, Jr.,* and *Jerome F. Healy, III,* with him on the brief; *Healy & Fusfeld,* attorneys), for appellants.

*Jay Leo Rothschild* of counsel (*Harry L. Staley* with him on the brief), for respondent.

BOTEIN, P. J. On June 12, 1961, Special Term adjudged Michael T. Marshall, age 70, an incompetent person on the basis of the findings of a Sheriff's jury. Mr. Marshall's principal business, conducted chiefly through the medium of approximately 50 corporations of which he is sole stockholder, is the ownership and operation of 120 taxicabs and related garage and parking facilities. The jury valued his personal property at about $1,500,000, but since the taxicab medallions, as the municipal operating licenses are called, were taken at a low book value, the value probably approximates twice that figure. Additionally, certain New York and Florida real property was valued at more than $400,000. Total annual income of the incompetent was found to be approximately $56,000 — evidently before pay-

ment of income taxes, since the estate's probable 1961 net income after taxes was estimated at about $25,000.

The presumptive distributees of Mr. Marshall's estate upon his death are his wife, age 60, who resides with her husband in New York, and their only child, Michael, Jr., who is 29 years of age. Michael, Jr., is married and resides in Florida. In 1957 he suffered injuries which have left him almost completely paralyzed, in need of continuous nursing attention, and unable to sign his name except by mark. He has stated that for a period of two and one-half years he was in sole operating control of Marshall Motors, Inc., during which period that concern, evidently formed to do business in Florida with funds provided by the incompetent or one of his companies, lost $225,000.

On June 12, 1961, the date Marshall was adjudged incompetent, Mrs. Marshall was appointed committee of the person. Her then attorney, and one Frederick M. Weisse, who manages the taxi companies, as well as an attorney who had no previous connection with the Marshalls, were appointed committee of the property. The committee of the property was directed to make weekly payments to Mrs. Marshall as committee of the person at the rate of $27,578.76 per annum for maintenance and support of the incompetent. Payments, at the rate of $15,000 per annum, were also directed to be made to Michael, Jr., for his maintenance and support.

Mrs. Marshall had asked to be designated as one of the committee of the property. Denial of her request and differences with her attorney led to an application on her behalf, made by substituted attorneys, for reconsideration of the order of June 12, 1961. The application requested that Mrs. Marshall and Michael, Jr., or his designee be appointed committee of the property; and accompanying it was an affidavit by Michael, Jr., asking that he, or in the alternative his Florida attorney, be appointed. The court, in its opinion of August 21, 1961, indicated its willingness to add Mrs. Marshall and her son to the committee and its intention to retain the others, with certain restrictions as to commissions. Mrs. Marshall's original attorney, however, resigned shortly thereafter.

On September 18, 1961 an order was entered which accepted the resignation and appointed Mrs. Marshall and her son to the committee of the property (the former to receive no commissions or allowances). The stranger attorney selected by the court and Mr. Weisse were redesignated, on condition, in the case of the latter, that he accept one third of the commissions which may be allowed to a sole member of the committee.

On October 9, 1961 Michael, Jr., moved that the committee of the property be ordered to pay his debts, that his weekly allowance be increased to an amount consistent with an appended affidavit showing weekly expenses of $1,060, and that fees be awarded his attorney. The co-committeemen, in opposition, asked that the motion be referred to the Judge who had fixed the original allowance, that upon such reference the allowance be increased to $600 a week, that payment of the debts " directly to the creditors enumerated in the moving papers " be approved, and that the motion in all other respects be denied. An order entered October 25, 1961, which is the subject matter of the present appeal, provided for payments to the creditors of Michael, Jr., directed a reference to hear and report on the issues raised with respect to the resetting of his weekly allowance, and modified prior orders of the court to the extent of fixing the weekly allowance at $600 pending the reference. The balance of the motion was held in abeyance until receipt of the Referee's report. The co-committeemen do not object to the provisions of the order relating to the payment of the debts, but have appealed from the other provisions.

There are aspects of this incompetency proceeding not raised specifically upon appeal that cause us grave concern. The history of the proceedings antedating the order appealed from does not entirely assure us that Mr. Marshall, the incompetent, is receiving in respect of the preservation of his estate the full care and protection to which a ward of the court is entitled. We do not, therefore, confine ourselves to the narrow issue raised on appeal. Of necessity, even if we were to limit ourselves to the fixing of Michael, Jr.'s, allowance, we would be constrained in the proper exercise of the court's responsibility to its ward to consider the inroads upon principal that will be made by such allowance and other allowances, as well as expenses of administration — particularly in view of the relatively small income earned by so large an estate. Conscientious discharge of the court's responsibility therefore commands a comprehensive review of the entire pattern of administration of the incompetent's estate.

Islands of litigation between Michael, Jr., and his fellow committeemen, such as this application regarding the amount of his allowance, hardly further an efficient administration of the estate. Plainly, on the record before us, Michael, Jr., should not be a member of the committee. Not only does he reside in Florida " out of touch with the interests of the incompetent here " (*Seitz Estates* v. *Seitz,* 226 App. Div. 373, 381; and see *Matter of Santora,* 253 App. Div. 208, 209); he is physically

incapacitated and it is his announced desire to delegate his duties to attorneys. The court appointed him with reluctance upon the "fervent urging" of his mother and "her belief that his physical paralysis has not impaired his thinking capacity." Much as we sympathize with one in his plight, her desire that he receive commissions surely should not be gratified if it is not contemplated that he perform services (see *Matter of Rutledge,* 162 N. Y. 31, 34) and what contribution to the conservation of the estate he can make in his unfortunate circumstances is hard to envisage. Furthermore, even were he entitled to commissions, it would seem proper that his allowance for maintenance should in some appropriate manner be adjusted to reflect this anticipated income; his own earnings, from whatever source derived, must be taken into account when measuring his monetary needs. The cleaner and more logical disposition of his application, however, dictates the fixation of an allowance that will reflect his needs as well as the size and nature of his father's estate; an allowance that will not be distorted by added payments in the guise of commissions for alleged services that at best will contribute nothing to the appropriate administration of the incompetent's estate.

Misgivings arise also in connection with the appointment of Mr. Weisse. The special guardian's report of May 17, 1961 stated that he had "just recently undergone a very serious and delicate heart operation, and has been unable to attend to his duties as general manager of the business of Michael T. Marshall for the past six (6) months. At least for the present, it would appear to me, that he would be physically unable to perform the duties required of a Committee, in a matter such as this." Papers signed as late as October 23, 1961 by Mrs. Marshall and the attorney member of the committee intimate that, while Weisse was available for consultation, his cosignature was not obtained because of his illness; and the record indicates that he was devoting but a part of each week to the taxicab business. The appointing Judge took note of his illness but believed his familiarity with the business would be helpful and "the petitioner and her counsel feel that some consideration should be shown to Mr. Weisse for his long years of service."

Weisse, it appears, receives a salary from the incompetent's companies. It may be that his knowledge of the business would not be equally or as readily available to the committee in his capacity as a paid employee; but we do not find that this contingency has been explored. Weisse, moreover, is in an anomalous position which requires him as a committeeman to keep watch over his own activities as manager or comanager

of the companies. " The standards of conduct which the courts apply to persons who act as committee are very high. Self-interest, even unconscious, may not dictate their actions " (*Matter of Hidden,* 243 N. Y. 499, 511). It may well be that no danger is to be apprehended from the dual capacity in which Weisse functions, that it presents no conflicting ingredients, and that his receipt of commissions, although at a reduced rate, as well as his salary, is proper (see *Elias* v. *Schweyer,* 13 App. Div. 336, 340, 341; *Matter of Andrews,* 125 App. Div. 457, 467, 468, revd. on other grounds 192 N. Y. 514). But once again, the facts do not appear to have been explored.

These uncertainties relative to Weisse are intensified by uneasiness regarding his relationship with Mrs. Marshall. She had originally concurred in his appointment, but later, at a hearing, said she did not want him on the committee. Her counsel stated that Weisse " in spite of his shortcomings must be fairly dealt with. After all the years he spent with Mrs. Marshall, with Mr. Marshall, he is deserving of some consideration ". Counsel then referred to Weisse's " troublemaking ", in definition of which he recited a series of complaints against Weisse, such as his " attempts to become president of the 51 corporations and as such president the only officer to sign checks "; his " endeavor to have another person elected the third director of all those corporations, thus taking away from the Marshall family the control of the 51 corporations "; his attempt, described by counsel as unconscionable, to have Mrs. Marshall sign an agreement giving a Mr. Vogel — who was employed in the business — retroactive bonus and benefits " without the knowledge of the committee, with the statement that it was none of the committee's business ". These complaints against Mr. Weisse, who was not present at the hearing, may or may not have substance. What concerns us presently is their revelation of distrust and dissension between two of the conservators and the possible adverse effect upon the administration of the estate. Counsel who voiced the complaints in behalf of Mrs. Marshall are now counsel for the committee.

The requirement for at least searching examination into the blending of Weisse's positions as company manager and committeee member is underlined by the fact that the major portion of the estate's income is gained from the operation of the taxicab companies; and the entire estate income appears to be substantially less than the payments that must be made in the form of allowances, commissions and legal fees. The outlook for the estate, therefore, seems to be a steady and considerable invasion of principal, rendering a comprehensive

inquiry into the potential for increasing income all the more imperative. In this connection it might be observed that the income when measured against the net worth of the estate apears to be uncommonly low; yet the record does not indicate that any member of the committee has investigated the feasibility of selling some of the estate assets and reinvesting the proceeds in assets calculated to bring a higher return.

In view of the foregoing and in view of Special Term's conclusion that Mrs. Marshall "is not a business woman and admittedly lacks the necessary ability", we are required to consider the position of the court-appointed attorney. After the inquisition Mrs. Marshall and her son moved for the appointment of a committee of the property, and other relief, upon a petition by Mrs. Marshall that the committee be composed of herself, Mr. McKegney, her then attorney and Weisse, and an affidavit by Michael, Jr., requesting the appointment of Mr. Weisse as one of the members. At a hearing held on June 7, 1961, the court discussed the composition of the committee with Mrs. Marshall, Mr. Weisse and Mr. McKegney, and indicated it would appoint, in addition to the latter two, a then unnamed attorney. To this Mrs. Marshall assented, and there ensued the following exchange:

"THE COURT: Is that agreeable to you?

"MRS. MARSHALL: Yes.

"THE COURT: Provided you are given the $27,500 that you ask.

\* \* \*

"THE COURT: The Court will direct, then, that the attorney whom it appoints will not interfere in any way with the operation of the business.

"Do you understand that, Mr. Weisse?

"MR. WEISSE: Yes.

"THE COURT: With your consent, then, I will go ahead, read the papers today, and dispose of the matter, granting you $27,500, and appointing Mr. McKegney, and appointing Mr. Weisse, and appointing a third party attorney, as the three members of the committee of the property, to whom Mr. McKegney and Mr. Weisse will report when he asks them.

\* \* \*

"MRS. MARSHALL: Your Honor, I took it for granted that it would be Mr. McKegney and Mr. Weisse, because Mr. Weisse knows the whole business and me. Now you say there will be a fourth one.

"THE COURT: Wait a minute. I didn't say there would be a fourth one at all. I said there would be a third one, and you are given your $27,500. In other words, I would be giving you that under the order, giving your son his amount, appointing Mr. McKegney, Mr. Weisse and somebody else, and appointing you as committee of the person.

\* \* \*

"MRS. MARSHALL: Would the third person, an attorney, interfere with the business?
"THE COURT: He will not interfere in any way.

\* \* \*

"THE COURT: The Court will also appoint as such committee Osborne A. McKegney, attorney for Mary L. Marshall, and Frederick M. Weisse, as committee, who is to run the business, and a third party to be appointed by the Court, who is not to interfere in the conduct of the business."

\* \* \*

As Mrs. Marshall was to be appointed committee of the person and lacked business experience, and as Mr. McKegney was her own attorney as well as her husband's, the refusal to name her one of the committee of the property at that time is understandable. What specific reason the court had for unsolicitedly adding an unsought stranger to the committee, and his commissions to the expense of administration, does not appear (see *Matter of West,* 13 A D 2d 599). In all fairness it should be noted that Mrs. Marshall now seems to be eminently satisfied with the stranger's designation, and no criticism has been voiced by anyone about his conduct; but what is of immediate concern to us are the repeated statements of the court below that he was not to interfere with the business.

Were it not that one of the statements was addressed to Weisse, we might infer that the court, whether such statements were well advised or not, was seeking to still Mrs. Marshall's qualms regarding the introduction of a stranger into her husband's affairs and to allay her disappointment at not being named to the committee. We find no communication to the stranger member of the committee of the court's interdiction against interference with the business; and, if there was, we have no reason to believe that he is acting on any interpretation inconsistent with his responsibilities of oversight and vigilance as a bailiff of the incompetent's property. But the statements were made, they are susceptible of such an interpretation, and they call for further inquiry.

We are aware that proceedings such as these are often appropriately informal and only partially transcribed, and we appreciate that we lack the benefit of the face-to-face colloquy with the participants which Special Term enjoyed. Admittedly all of the facts are not before us. But it is axiomatic that Mr. Marshall's comfort and welfare must be our primary consideration (*Matter of Kalthoff*, 298 N. Y. 458, 461), and the impression is inescapable that the administration of his estate has gotten off on an insecure footing. Present here are risks of unsound and dissentient management not to be ignored; present, too, is an apparently needless burden of duplicative administrative expense (cf. *Matter of McCarthy*, 279 App. Div. 716, affd. 304 N. Y. 601; *Matter of Pfleghar*, 31 Misc 2d 244, affd. 271 App. Div. 880; *Matter of Foster*, 230 App. Div. 730, affd. 254 N. Y. 614). The estate is substantial but on the basis of present allowances and indicated income, steady and continuous invasion of corpus will be inevitable; in other words, we are dealing with what may be a diminishing capital devoted to a business which hardly represents an impregnable investment.

The brief in behalf of Michael, Jr., asks, "When everything is said and done, for whom is this estate being preserved?" The implication that it is being preserved primarily for those who will receive it when Mr. Marshall dies is unacceptable (*Matter of Cook*, 6 N. Y. S. 720). The Court of Appeals has cautioned that the recovery by an incompetent person of his mental faculties is a possibility not to be overlooked (*Matter of Kalthoff, supra*), and improbable as that seems in the case of Mr. Marshall in the light of the medical testimony, the period of life left to him may not be measured by guess nor may his own future means of sustenance be subjected to avoidable risk.

Estates are not likely to be well served by custodians of whom some are at odds, others forced to take sides, and all intermittently distracted from primary duty by the discord (see *Disbrow* v. *Disbrow*, 46 App. Div. 111, 114, affd. 167 N. Y. 606). Of course, where control of an incompetent's property is reposed with several custodians, differences regarding the best means of promoting his interests may occasionally develop. Ordinarily, a spirit of friendly co-operation resolves them. Visible in the papers before us, however, are charges that the mother is inimical to the son and countercharges that the son is a thoughtless squanderer and that certain of his alleged expenses are spurious. Since the other members of the committee object to the full allowance sought by the son, the probability is that, unless remedial steps are now taken, administration of the estate

will go forward in an atmosphere of suspicion and hostility. This will not be lightened by Mrs. Marshall's accusations against Weisse nor by the possible and understandable expectation of Mrs. Marshall and Mr. Weisse that the stranger member of the committee will in no way interfere with the incompetent's business. It does not follow as a certainty that Mr. Marshall's possessions will deteriorate. The judicial stewardship, however, is barely launched, yet the auguries are ill—why should unnecessary hazards be risked?

We intend no prejudgment of any of the matters to which we have alluded. As we have said, all of the facts do not appear of record. Perhaps our apprehensions, or some of them, will prove exaggerated after all concerned are heard—as of course they should be (*Matter of Andrews,* 192 N. Y. 514). But "to close our eyes and ears to information bearing upon the fitness of any person for the discharge of so high a trust is error" (*Matter of Osborn,* 74 App. Div. 113, 116).

The order of Special Term entered October 25, 1961, should accordingly be modified on the law, the facts, and in the exercise of discretion, to the extent of deleting the first decretal paragraph and the references to the Referee's report mentioned in subsquent paragraphs, and of directing that the weekly payments ordered by the third decretal paragraph shall continue, and that the provisions of the last decretal paragraph shall continue to be held in abeyance, pending the report of the special guardian as hereinafter directed and until the further order of the court. The matter should be remanded to Special Term and Hon. DAVID W. PECK of 48 Wall Street, New York, N. Y., should be appointed special guardian of Mr. Marshall for the purpose of exploring the advisability of filing a petition seeking the removal of the entire committee of the property and in any event reporting his findings and recommendations to Special Term. In view of the insecure status of the estate, it is obvious that this aspect of the proceeding should be concluded as expeditiously as is reasonably possible. The order should be otherwise affirmed, without costs. Settle order.

BREITEL, VALENTE, STEVENS and EAGER, JJ., concur.

Order entered on October 25, 1961 unanimously modified on the law, on the facts, and in the exercise of discretion, to the extent of deleting the first decretal paragraph and the references to the Referee's report mentioned in subsequent paragraphs, and of directing that the weekly payments ordered by the third decretal paragraph shall continue, and that the provisions of the last decretal paragraph shall continue to be held

in abeyance, pending the report of the special guardian as hereinafter directed and until the further order of the court. The matter is remanded to Special Term and Hon. DAVID W. PECK of 48 Wall Street, New York, N. Y., is appointed special guardian of Mr. Marshall for the purpose of exploring the advisability of filing a petition seeking the removal of the entire committee of the property and in any event reporting his findings and recommendations to Special Term. In view of the insecure status of the estate, it is obvious that this aspect of the proceeding should be concluded as expeditiously as is reasonably possible. The order is otherwise affirmed, without costs. Settle order on notice.