Jacob Markowitz, J.
Petitioner, R. Marshall Witten, as Vermont guardian of the person and property of Jean F. Hance, an 83-year-old widow, seeks appointment in this State as ancillary committee of her property in New York.
The distinguished guardian ad litem, the Hon. James B. M. McNally, has raised many issues as to the propriety of this appointment, among which are: (1) whether full faith and credit should be afforded to the Vermont proceedings; (2) whether this court should assume jurisdiction for the purpose of determining incompetency under section 78.01 and subdivision (b) of section 78.03 of the Mental Hygiene Law, and (3) whether a resident committee should be appointed and authorized to exercise Mrs. Hance’s right of election against the will of her late husband.
Initially, the threshold question as to the extent to which the Vermont proceeding, which declared Mrs. Hance’s incompetency, is entitled to full faith and credit, must be considered.
The Vermont proceeding was initiated in the Probate Court for the District of Manchester, Vermont, a court of limited *164 jurisdiction, by an unverified ‘ ‘ Application for the Appointment of a Guardian-Adult ”, dated August 7, 1973. The application was made by Mrs. Ethelind Johnston, Mrs. Hance’s niece, a resident of Canada. The application was filed on August 15. A “ Citation on Petition ” (order to show cause) was served on Mrs. Hance by a deputy sheriff on August 16, commanding her appearance at a hearing on August 27. All here involved agree that at that time Mrs. Hance was unable to personally arrange for her defense. On August 22 an undated notice of appearance was filed by Thomas P. Whalen, Esq., indicating that he was appointed by the Probate Court to represent Mrs. Hance at the hearing “ re Involuntary Application for Appointment of a Guardian ”.
It was established at the hearing before me that no sworn testimony was taken on the return date of the Vermont proceeding, and that the only persons present were Mr. Witten and Mr. Whalen. This, notwithstanding, on the same date of the “ hearing ”, a “ Guardian Letter for Adult ” was issued by the Probate Judge reciting that “ after due notice and hearing held ” Mrs. Hance was adjudged to be “ by reason of age and infirmity incapable of taking care of herself and her property, and in need of a guardian ”. Mr. Witten qualified by filing a bond.
Mr. Witten testified at the hearing in the present proceeding that Mrs. Hance’s niece agreed to petition the Vermont court, and to recommend him as committee, based on a conversation he had with her and that this took place after he had spoken to Mrs. Hance’s doctor. The doctor was not present at the Vermont hearing; nor was any other doctor. The conversation with Mrs. Hance’s niece alluded to apparently took place over the telephone.
Against this background and under the circumstances as they evolved, it was necessary for this court to probe into the facts de novo and make findings accordingly. The “ proof ” as to the Vermont proceedings as summarized above was fully inquired into. Since the conclusion of the last hearing in this court a number of documents were submitted by the parties. These have been made part of the record and have been enumerated as court exhibits.
Upon the evidence before me, it is the conclusion of this court that the findings and appointment of the Vermont court are not binding on this court under the principles of full faith and credit or of comity. (See Mason’s Guardian v. Mason, 86 Vt. 279; *165 Town of Brighton v. Town of Charleston, 114 Vt. 316; Matter of McMahon Children, 115 Vt. 415.)
To avoid annulling the Vermont proceeding collaterally, however, this court need not definitively decide whether that proceeding was invalid. Mrs. Hance’s doctor testified before me, and, based on his testimony, confirmed by other witnesses, I find Mrs. Hance incompetent to manage her affairs by reason of age and mental illness.
As recommended by the guardian ad litem, this court takes jurisdiction under section 78.01 of the Mental Hygiene Law. A full hearing has been held here, and it is but a matter of form, whether the committee is appointed under sections 78.01 and 78.03, or whether section 78.11 is also brought into play.
Mr. Witten’s position is not materially different in either contingency. The statute expressly makes the appointment of an out-of-State guardian as committee in this State discretionary with the court (Mental Hygiene Law, § 78.11). Assuming, arguendo, that Mr. Witten was duly appointed in Vermont, full faith and credit does not mandate his appointment as ancilliary committee in this State; his appointment as such still rests in the discretion of this court (Seitz Estates v. Seitz, 226 App. Div. 373, 379-381; Seitz Estates v. Medico Bros., 247 App. Div. 71, affd. 272 N. Y. 492; Stock v. Mann, 255 N. Y. 100, 103-104; Matter of Kassler, 173 Misc. 856, 860-861). The sole legal effect of the Vermont adjudication, even assuming due process after an appropriate hearing, is that this court could deem it prima facie but not conclusive proof of incompetency. (Matter of Curtiss, 134 App. Div. 547, affd. 197 N. Y. 583; see, also, East End Trust Co. v. Otten, 255 N. Y. 283, 285.)
The dispositive factor is the best interests of Mrs. Hance (Matter of West, 13 A D 2d 599, 600). ‘ ‘ While the usual practice is to appoint a next of kin or other close blood relative or the nominee thereof, the court is not bound to do so. There is no positive rule of law compelling the court to appoint a next of kin nor any absolute subordination of strangers to relatives. The paramount consideration is the best interests and welfare of the incompetent so that the court may, in the exercise of discretion approve a stranger as the sole committee, where there is a valid objection to the close relative or his nominee.”
A foreign conservator, as such,, is without power to act in this State for one who has been adjudged an incompetent elsewhere but not here (Stock v. Mann, 255 N. Y. 100, 103, affg. 229 App. Div. 19, supra). Indeed, prior to the enactment of section 2326 of the Code of Civil Procedure (thereafter Civ. Prac. Act, *166 § 1363; now Mental Hygiene Law, § 78.11), the courts of this State were not conferred with power to appoint a foreign committee of a nonresident incompetent; they were authorized only to appoint a resident committee to take control of assets locally situated (Seitz Estates v. Seitz, 226 App. Div. 373, supra; Matter of Kassler, 173 Misc. 856, supra). “ The enactment of section 2326 was merely a further extension and legislative application of the principles of comity in that it gave to the court additional discretionary power to appoint the foreign guardian himself as an ancilliary officer.” (Matter of Kassler, supra, p. 861; to same effect, Seitz Estates v. Seitz, supra, p. 380.) A resident committee, rather than the foreign committee, may still be appointed (Seitz Estates v. Seitz, supra, p. 381; see, also, Matter of Marshall, 15 A D 2d 310, 313-314).
The record before me compels the conclusion that a resident guardian should be designated committee in this State for the following reasons
1. Mrs. Hance’s substantial property interests in this State. She is beneficiary of a trust with a corpus of $1,400,000 from which she receives an annual income of $40,000, She has other property worth approximately $300,000. A safe deposit óf unknown content is also in this jurisdiction, as well as stored furs. She also has a statutory substantial interest in the estate of her late husband whose will has been offered for probate here. All this is in contrast to her Vermont, assets which consist of a small cottage, jewelry, and $25,000 in bank deposits.
2. The question of her residence. Without question she was a New York resident until 1970. Whether she did in fact change her residency, or indeed was mentally capable of doing so, is at best debatable.
3. Mr. Witten’s possible conflict of interest. Mr. Witten is a lawyer admitted to practice in November, 1959. While M was first admitted to the Bar in New York he practiced here for only two years. In 1961 he and his family moved their residence to Vermont, where he was admitted to the Bar and has practiced since that time. His. only connection with New York law in the interval between 1961 and the present time is one criminal case.
Mr. Witten was introduced to Mrs. Hanee in 1971 through a call from his New York attorneys in the present proceedings. They called him in connection with a codicil to Mrs. Hance’s will, which she executed in July of 1971.
*167 I note parenthetically in connection with the foregoing that Mrs. Hance’s doctor testified that her cerebral arteriosclerosis became apparent in or about November, 1970, that approximately since then she has been confined to her bed or strapped in her chair and that her condition has become progressively worse with the passage of time.
A week after the codicil was executed Mr. Witten also handled the sale of Mrs. Hance’s summer home in Vermont, she reserving only the cottage in which she now lives.
In October of 1971, Mrs. Hance executed a general power of attorney to Mr. Witten, under which he has paid her bills, was authorized to sign checks on her bank account, balanced her checkbook, and was generally in charge of her financial affairs in Vermont.
The power of attorney was executed by Mrs. Hance in bed, in a nursing home, in the presence of Mr. Witten, one of his law partners, who acted as notary, and a nurse.
The power of attorney had not been revoked when Mr. Witten was appointed Mrs. Hance’s guardian in Vermont in August of 1973, and there has been no judicial accounting at any time of his acts as attorney in fact between October, 1971 and August of 1973.
4. The codicil, the sale of the house, and handling her Vermont financial affairs represented the sum total of Mr. Witten’s services for Mrs. Hance, until his appointment as her guardian.
Between October, 1971 and August of 1973, Mr. Witten corresponded with Mrs. Hance’s niece in Canada and spoke to her on the telephone. He had also spoken to Mrs. Hance’s doctor. In August of 1973, he discussed with Mrs. Hance’s niece the advisability of applying for the appointment of a guardian for Mrs. Hance. As noted Mrs. Hance’s niece agreed to make the petition and to name Mm as committee, and his appointment as guardian of the person and property of Mrs. Hance in the manner above outlined, followed.
Mr. Witten met Mrs. Johnston personally for the first time the morning they testified before me.
5. The deposits in Mrs. Hance’s bank account in Vermont, consisting of $1,500 a month support payments by Mr. Hance, were made directly from New York by Mr. Hance. Mr. Witten testified: “ We had no knowledge of any assets that she might have had anyplace else, and in fact did not and never have to this day dealt with any assets that she might have had in any other state * * * than Vermont ”.
*168 This included preparation of her income tax returns, which were prepared in New York under the' auspices of Mr. "Witten’s present New York counsel. Except that Mr. Witten supplied information to counsel respecting Vermont transactions he had “ absolutely nothing to do with her tax affairs at all.”
In summary, Mrs. Hance has been a longtime New York resident, in 1970 it became apparent that she was suffering from cerebral arteriosclerosis, since that time she has been confined to her bed, and, when in a chair, she must be strapped into it, her estate is situated practically in its entirety in New York, Mr. Witten met Mrs. Hance in 1971 at the instance of New York lawyers, his relations with her since then have been peripheral, since October of 1971 he has acted for her under a general power of attorney, he has not yet judicially accounted for his acts as attorney in fact, his recommendation to the Vermont Probate Court was by Mrs. Hance’s niece, and the proceedings in Vermont were informal, no hearing in the usual sense took place, and at best, the findings of the Probate Court were based on the unrecorded personal knowledge of the participants.
Lest I be misunderstood, I hasten to add that nothing above written is intended to reflect personally upon Mr. Witten or others mentioned. Indeed, I have no reason to believe but that all, without exception, are persons of integrity, motivated by best intentions. The facts remain, however, that there is serious doubt that Mrs. Hance, a longtime New York resident, ever became a Vermont resident, that pragmatically hers is a New York, not a Vermont estate, that potentially there is a conflict of interest between Mr. Witten’s former position as attorney in fact and his present position as guardian of Mrs. Hance’s property (Matter of Bankers Trust Co. [Shulze], N. Y. L. J., Feb. 1, 1974, p. 16, col. 1; Matter of U. S. Trust Co. of N. Y. [Koeckert], N. Y. L. J., Sept. 26, 1973, p. 18, col. 1; see also Meinhard v. Salmon, 249 N. Y. 458, 464), that the possibility of an adverse interest on his part bears on whether he should be appointed Mrs. Hance’s sole committee (Matter of Shea, 296 N. Y. 551, affg. 270 App. Div. 882; see, also, Matter of Hidden, 243 N. Y. 499, 511), and that as a nonresident, he is “ out of touch with the interests of the incompetent here ’ ’ (Seitz Estates v. Seitz, 226 App. Div. 373, 381, supra, cited in Matter of Marshall, 15 A D 2d 310, 313, supra).
In this context, I am convinced that Mr. Witten’s appointment as sole committee would not serve the best interests of Mrs. Hance, that the appointment of a co-committee, unconnected with the parties is necessary to protect her rights, but *169 that Mr. Witten should be permitted to act in New York as co-committee. The petition is disposed of accordingly.
Notwithstanding the fact that in the best interests of the incompetent, a New York committee, and not an ancillary committee, will be appointed, it is expected that the inclusion of Mr. Witten will result in co-operation between the two jurisdictions for Mrs. Hance’s ultimate benefit.
Fixation of fees and allowances for the services rendered in this proceeding is deferred until after the entry of judgment; and the court retains jurisdiction to fix the same on motion at that time.
Settle judgment, making provision for the appointment of a committee of two persons, including petitioner, of the property in New York of Jean F. Hance, an incompetent person, and authorizing the committee, in behalf of their ward, to serve and file an election to take against the will of Mrs. Hance’s husband, and reserving to the parties hereto, and, to either member of the committee, the right to move at the foot of the judgment for such other or further relief, and for the modification of any provision of the judgment, as may be just and proper.