*237 OPINION OF THE COURT
Lewis R. Friedman, J.
The petition at bar seeks appointment of a guardian to deal with the New York holdings of a United States citizen for whom a conservator has been appointed pursuant to French law. The Mental Hygiene Law has been amended (L 1992, ch 698), effective April 1, 1993, as a result of extensive studies done by the Law Revision Commission over a 5-year period (see, 1990 NY Legis Doc No. 65; 1989 NY Legis Doc No. 65 [C]). The law provides an entirely new regime, article 81, for the administration of the affairs of persons who are mentally or physically incapacitated and unable to care for themselves or their affairs. The Legislature repealed article 77 (dealing with conservators) and article 78 (dealing with committees). "Conservatorship * * * frequently is insufficient to provide necessary relief * * * [while] a committee * * * traditionally involves a deprivation [of rights] that is often excessive and unnecessary” (Mental Hygiene Law § 81.01). The Legislature declared article 81 to be a "guardianship system which is appropriate to satisfy either personal or property * * * needs of an incapacitated person in a manner tailored to the individual needs of that person” (Mental Hygiene Law § 81.01). The statute contains a detailed procedure to protect the rights of an allegedly incompetent person (AIP).
The AIP has resided in France for many years; pursuant to French law, conservators of his property have been appointed by a Juge des Tutelles du Tribunal DTnstance de Paris. The instant petition includes that court’s decision, as well as copies of the papers before the French court, and certified translations of all the documents. Petitioner is a daughter of the AIP, and one of the conservators appointed by the French court. She seeks an order appointing her as ancillary guardian in New York to deal with the AIP’s substantial financial holdings in New York. The coconservator appointed in France, the AIP’s son who resides in Saudi Arabia, is not an applicant.
Mental Hygiene Law § 81.18 provides that when the AIP "is not present [in] the state and a guardian, by whatever name designated, has been duly appointed * * * [by] any other state, territory, or country * * * the court in its discretion, may make an order appointing the foreign guardian as a guardian under this article with power with respect to property management within this state.” However, article 81 does not have a special procedure applicable to the appointment of *238 ancillary guardians.* This application, apparently the first under the new statute, requires the court to alter the procedures used for other guardianship proceedings since those rules produced results contrary to the Legislature’s purpose.
The legislative history of section 81.18 provides no insight into how an application should be handled. The section tracks, almost verbatim, the language of the statutes applicable to conservators (Mental Hygiene Law § 77.15) and committees (Mental Hygiene Law § 78.11). The language actually has its origin in section 2326 in the 1880 Code of Civil Procedure (L 1880, ch 178). It has long been the rule in this country that an executor appointed in one State does not have authority to act in another State (see, e.g., Hoyt v Sprague, 103 US 613, 631 [1880]; Morgan v Potter, 157 US 195, 197 [1895]; Mann v Pacific Atl. S. S. Co., 10 F Supp 527 [SD NY 1935]; J.B. & J.M. Cornell Co. v Ward, 168 F 51, 52 [2d Cir 1909]). The Court of
Appeals has followed the analysis of that authority and concluded that a foreign conservator may not act in this State for a person adjudicated incompetent elsewhere (Stock v Mann, 255 NY 100, 103). Full faith and credit does not require this State to follow the guardianship holding of another State (Stock v Mann, supra; Seitz Estates v Seitz, 226 App Div 373, 379-381; Seitz Estates v Medico Bros., 247 App Div 71, affd 272 NY 492; Matter of Kassler, 173 Misc 856, 860-861; Matter of Witten, 78 Misc 2d 162, 165). Obviously the decision by a court
in a foreign country to appoint a guardian is not subject to full faith and credit. However, it has long been the rule in New York that a foreign proceeding could be used as the basis for the appointment of a committee here (see, e.g., Matter of Neally, 26 How Prac 402 [1864]; Ex parte Gillam, 2 Ves Jr 587, 30 Eng Rep 790; Matter of Perkins, 2 Johns Ch 124 [1816]; Seitz Estates v Seitz, supra, 226 App Div, at 379). The act of appointment by a foreign court makes out a prima facie case here (Matter of Curtiss, 134 App Div 547, affd 197 NY 583; East End Trust Co. v Otten, 255 NY 283, 285).
However, prior to Code of Civil Procedure § 2326 the court was restricted to the appointment of a resident committee. That statute merely permitted, for the first time, the foreign fiduciary to apply in his or her own name to be the New York ancillary guardian (Seitz Estates v Seitz, supra, 226 App Div, *239 at 380; Matter of Kassler, supra, 173 Misc, at 861). The Law Revision Commission’s Recommendation, Memorandum in Support and Comments contain no reference to the purpose of this section. Therefore, the court concludes that the new statute (Mental Hygiene Law § 81.18) is designed to do no more than its predecessors — to regulate who may apply for ancillary guardianship.
The prior procedure also does not provide guidance for this application. Previously the court, on an initial application under article 77 or 78, typically appointed a guardian ad litem because both articles required appointment of a guardian ad litem, unless counsel appeared (Mental Hygiene Law former § 77.07 [b]; former § 78.03 [e]). However, "[i]n the past it often has not been clear whether the guardian ad litem * * * [was] acting as advocate for the person who was the subject of the proceeding or as a neutral eyes and ears of the court” (1992 Report of NY Law Rev Commn [1992 NY Legis Doc No. 65 (c)] reprinted in part following McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.10, 1993 Pocket Part, at 243).
Article 81 resolves the dispute about the former guardian ad litem’s role by splitting it into two parts. There are now two possible appointees to assist the court and the AIP: a court evaluator and counsel. The problem is that neither appointee provided for in the new statutory scheme would be appropriately appointed here.
One of the key innovations in article 81 is that a court evaluator "shall” be appointed in each case (Mental Hygiene Law § 81.09 [a]). The "court evaluator” is an independent investigator who gathers information about the AIP, and the availability of resources and helps to determine the proper role of a prospective guardian.
Court evaluators must receive special training in their legal duties, the rights of AIP’s, available resources, medical terminology, resources available to the AIP, as well as government entitlements and "psychological and social concerns relating to the disabled and frail older adults.” (Mental Hygiene Law § 81.40 [b] [6].) That training is necessary because those factors directly relate to duties under section 81.09 (c). The statute specifies, inter alia, that a court evaluator’s duties "shall include the following: (1) meeting, interviewing, and consulting with the person alleged to be incapacitated regarding the proceeding. (2) explaining to the person alleged to be incapaci *240 tated * * * the general power and duties of a guardian * * * and the rights to which the person is entitled, including the right to counsel * * * (5) * * * making a written report and recommendations to the court; the report and recommendations shall include the court evaluator’s personal observations”.
Without doubt the court evaluator’s duties require meeting the AIP in order to investigate and make a recommendation to the court. Obviously that meeting must be "face to face” in every case. There is no exception in the statute for situations such as the one at bar. Indeed, when specific rules for out-of-State AIP’s are involved, the Legislature made appropriate provisions such as section 81.05 (a) relating to venue, and section 81.11 (c) (1) relating to the AIP’s presence at the hearing (see, Law Rev Commn Comments, following McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.11, 1993 Pocket Part, at 245-247). In this case, a court evaluator would be required to travel to France, if appointed. That added cost, probably in excess of $10,000, would be borne by the estate of the AIP (Mental Hygiene Law § 81.09 [f]).
The statute also permits the appointment of counsel (Mental Hygiene Law § 81.10). "The role of counsel, as governed by this section, is to represent the person alleged to be incapacitated and ensure that the * * * view of the person alleged to be incapacitated is presented to the court” (Law Rev Commn Comments, op. cit., § 81.10, at 243). The AIP always has the right to counsel (Mental Hygiene Law §81.10 [a]) and the court must assign counsel if there is a request for a contest or the petition seeks nursing home placement or major medical treatment or there is a request for temporary guardian (Mental Hygiene Law § 81.10 [c] [l]-[5]). Also, the court must assign counsel if "the court determines that a possible conflict may exist between the court evaluator’s role and the advocacy needs of the [AIP]” (Mental Hygiene Law § 81.10 [c] [6]) or "if the court at any time determines that appointment of counsel would be helpful to the resolution of the matter.” (Mental Hygiene Law § 81.10 [c] [7].) If counsel is appointed "the court may dispense with the appointment of a court evaluator” (Mental Hygiene Law § 81.10 [g]).
Unless the Legislature specifies otherwise, this court’s obligation is to protect the interests of the AIP in order to carry out the intent of the Legislature. That is, the court must balance the alternatives currently available. The court con- *241 eludes that the best balance is reached by appointing counsel for the AIP and dispensing with the appointment of a court evaluator. The issues to be investigated here are predominately legal questions. At the outset, they relate to an investigation of the foreign proceedings, including an analysis of the rights afforded to the AIP in the forum as well as a recommendation as to whether judicial notice should be applied to the foreign conservatorship order. Court evaluators need not be attorneys and the specialized training required of them would not be relevant. Even an attorney, if appointed as court evaluator, would be required to travel to France to meet the AIP. Regardless of the size of the estate there is no reason on the face of the papers to burden the estate with unnecessary expenses. There are no specific requirements in the statute for counsel to meet the AIP "face to face”, even though the Law Revision Commission intended that counsel would have that type of meeting (see, Law Rev Commn Comments, op. cit., § 81.10, at 243-244). Thus, the implementation proposed here does the least damage to the statutory scheme while securing the benefit of counsel’s advice and participation.
In the usual case it is inappropriate for the court to give directions to counsel on how to carry out his or her obligations. However, in a case such as this, where the Legislature has provided no guidance on how to conduct the mandated hearing, a recommendation as to how to proceed would be appropriate. Counsel to be appointed is directed to learn enough about the case to be able to report, at the return of the petition, on the threshold questions of what effect should be given to the French decision. The court notes that established law permits disregard of the foreign decision (cf., Matter of Nenno v Nenno, 43 AD2d 791; Matter of Witten, supra) even if "[t]he question of competency has already been duly passed upon and duly established in the foreign jurisdiction” (Seitz Estates v Seitz, supra, 226 App Div, at 381). Travel to meet the AIP is not authorized at this time since it would burden the estate and would not, at this stage, advance the preliminary inquiry.
On the return date the court will determine whether the interests of justice warrant authorizing further inquiry by appointed counsel or whether the court will appoint a court evaluator.

 The Legislature has, however, enacted specific rules governing the appointment of ancillary fiduciaries where there is the death of a nonresident (SCPA art 16).